Leon G. SMITH and Karen H. Smith,
Plaintiffs-Appellees,

v.

D. Keith WHATCOTT, Phillip Taylor,
Taywin, Inc., Taycor Ltd. and Burke
Cloward, Defendants-Appellants.

No. 84–1337.

United States Court of Appeals,
Tenth Circuit.

March 25, 1985.

Arthur H. Nielsen, Salt Lake City, Utah (Clark R. Nielsen of Nielsen & Senior, Salt Lake City, Utah, and M. Dayle Jeffs of Jeffs & Jeffs, Provo, Utah, with him on the brief), of Nielsen & Senior, Salt Lake City, Utah, for defendants-appellants.

Richard B. Johnson of Howard, Lewis & Petersen, Provo, Utah, for plaintiffs-appellees.

Before HOLLOWAY, Chief Judge, and SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

A motion to disqualify defendants' counsel was filed in this appeal after plaintiff Leon Smith realized that an attorney employed by the firm hired to represent defendants on appeal had previously represented him on a matter related to the appeal. For the reasons set out below, we grant Smith's motion to disqualify opposing counsel.

The underlying case arose from certain fraudulent misrepresentations concerning occupancy limits made by defendants during the sale of an apartment building to Smith. Smith apparently learned of these misrepresentations sometime after the city of Provo City, Utah, instituted a criminal action against him for zoning violations. Smith engaged the law firm of Boyden, Kennedy and Romney to represent him in his defense. An associate in the firm, Mark Anderson, was assigned to the case and began to negotiate a settlement with Provo City. Following the completion of these negotiations, Smith consulted Anderson about filing a civil action against defendants, but eventually decided to hire other counsel. The relationship between Smith and Anderson ended sometime in 1980.

Smith then filed this civil action for fraud and in February 1984 was awarded damages of $210,000. The defendants decided

to appeal and retained Arthur and Clark Nielsen of the law firm of Nielsen and Senior to represent them in the appeal. Shortly before this development, however, most of the attorneys of Boyden, Kennedy and Romney, including Mark Anderson, joined the larger firm of Nielsen and Senior. At that time, the only precaution taken against possible conflicts of interest was to compare a list of the current clients of each firm. No attempt was made to identify former clients, and Anderson's previous representation of Leon Smith did not appear on this list. Mark Anderson was unaware that the firm was subsequently retained to represent defendants.

Nielsen and Senior first learned of the possible conflict when Clark Nielsen saw in the trial transcript a reference to a Mark Anderson who had represented Smith in the dispute with Provo City. When Nielsen asked Anderson if he had represented Smith, Anderson acknowledged that he had. Nothing else was said at that time. Following that conversation, Anderson did not discuss his representation of Smith with anyone in the firm nor allow anyone to see his files. The files and documents for the present appeal were kept in either Clark or Arthur Nielsen's office, and no other attorney in the firm was allowed access to them. Meanwhile, Nielsen did not notify opposing counsel of his discovery, but instead continued to work on the appeal brief due about a month later.

At about the same time, however, Smith recognized Mark Anderson's name on Nielsen and Senior's letterhead. He informed his attorney, Richard Johnson, of the conflict and Johnson contacted Nielsen and Senior to find out what they proposed to do about the situation. No agreement was reached and the briefs were filed on schedule. This motion followed.

As a preliminary matter, we reject defendants' contention that this motion was not timely or diligently filed and that the briefs should be stricken.[1] Although

---

1. In some sense, the damage is already done in

that any information Anderson could conceiva-

disqualification motions must be diligently pursued to avoid waiver and may not be used as strategic litigation tactics, *see, e.g., Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir.1975), we see no such abuse in the facts before us. Johnson notified Nielsen and Senior of his client's objection immediately after Smith recognized Anderson's name on the firm letterhead. Neither Smith nor Johnson could be expected to have otherwise known that Anderson was now employed by Nielsen and Senior. In fact, if Nielsen and Senior had inquired about previous clients when the attorneys of Boyden, Kennedy and Romney joined the firm, the conflict would have surfaced when defendants sought to hire the firm's services. Moreover, when Clark Nielsen actually learned of the conflict, he could have attempted to resolve the problem with Johnson before the briefs were filed. *Compare Trust Corp. v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983) *with Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 442–43 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983).

■ The merits of this disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client. *Redd,* 518 F.2d at 315; *accord, Kevlik v. Goldstein,* 724 F.2d 844, 850–51 (1st Cir. 1984); *Iacono,* 722 F.2d at 440; *Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir. 1983); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1344 (5th Cir.1981), *overruled on appealability issue, Gibbs v. Paluk,* 742 F.2d 181, 185 (5th Cir.1984). "Substantiality is present if the factual contexts of the two representations are similar or related." *Trust Corp.,* 701 F.2d at 87 (quoting *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980)).

■ In the instant case, defendants concede that the Provo City matter in which Anderson represented Smith is substantially related to the civil claim at issue here. The criminal action filed by Provo City directly resulted from the misrepresentations made by defendants to Smith at the time of purchase. More critically, defendants have raised the statute of limitations as an affirmative defense to Smith's claim, making pivotal the issue of when Smith actually learned of the misrepresentations. Smith asserts that Anderson learned of facts relevant to this determination during his representation of Smith, and Anderson does not deny that assertion.

■ Once a substantial relationship has been found, a presumption arises that a client has indeed revealed facts to the attorney that require his disqualification. The majority of circuits that have considered the issue have held this presumption to be irrebuttable. *See, e.g., Corrugated Container,* 659 F.2d at 1347 (5th Cir.); *Trone,* 621 F.2d at 998–99 (9th Cir.); *Arkansas v. Dean Foods Products Co.,* 605 F.2d 380, 384 (8th Cir.1979), *overruled on appealability issue, In re Multi-piece Rim Products Liability Litigation,* 612 F.2d 377, 378 (8th Cir.1980), *vacated sub nom. Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 754 (2d Cir.1975); *cf. Kevlik,* 724 F.2d at 851 (1st Cir.). *But see EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1461 (Fed.Cir.1984); *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 256 (7th Cir.1983). We agree. The presumption is intended to protect client confidentiality as well as to avoid any appearance of impropriety. Moreover, as the Fifth Circuit has pointed out, "[it] is intended to prevent proof that would be improper to make." *Corrugated Container,* 659 F.2d at 1347. It is clear therefore that Mark Anderson is prohibited from participating in this appeal. We must determine whether that prohibi-

---

bly have contributed to the brief is already a matter of public record, even if it is subsequently struck. Nevertheless, a party who knows or should have known of a potential conflict be-

fore briefs are filed should not be permitted to profit from a race to the courthouse, thereby preempting a disqualification motion.

tion extends to the rest of the Nielsen and Senior law firm.

■ The conclusion that two matters are substantially related also gives rise to a second presumption that the attorney shared information with his partners, thereby requiring the disqualification of the entire firm. *See id.* at 1346–47; *Iacono*, 722 F.2d at 442; *Schiessle*, 717 F.2d at 421. Several courts have recognized a limited exception to this firmwide disqualification where the firm can prove that the attorney involved in the first matter has been effectively screened from financial interest and participation in the second case. *See, e.g., id.; LaSalle*, 703 F.2d 257–59; *Armstrong v. McAlpin*, 625 F.2d 433, 445–46 (2d Cir.1980) (en banc), *vacated on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *Kesselhaut v. United States*, 214 Ct.Cl. 124, 555 F.2d 791, 793–94 (1977). Defendants urge us to adopt this exception here.

The exception originally was intended to prevent government lawyers from becoming "Typhoid Marys" upon their reentry into private practice. *Kesselhaut*, 555 F.2d at 793. If an entire firm had to be disqualified based on one lawyer's prior representation of an adverse client, then the hiring of a government lawyer could and did prevent a firm from opposing a particular governmental department. Rather than adopt a per se rule of imputed knowledge that would require automatic disqualification of a firm, courts have begun to examine the functional nature of the conflict and to recognize an exception for those firms which have effectively screened the challenged attorney from actual participation in the case and inadvertent disclosure of confidential information. *See, e.g., LaSalle*, 703 F.2d at 257–58; *Sierra Vista Hospital, Inc. v. United States*, 226 Ct.Cl. 223, 639 F.2d 749, 753–54 (1981); *Armstrong*, 625 F.2d at 442–46; *Kesselhaut*, 555 F.2d at 793–94. Partially in recognition of the increasing numbers and mobility of lawyers

throughout the profession, courts have extended the logic of this exception beyond the context of government lawyers to permit evidence of effective screening when individual lawyers change firms.[2] *See EZ Paintr*, 746 F.2d at 1462; *Schiessle*, 717 F.2d at 421; *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722–23 (7th Cir.1982); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 197 (7th Cir.1979) (en banc); *cf. Corrugated Container*, 659 F.2d at 1346–47; *Dean Foods Products*, 605 F.2d at 385 & n. 4.

The Seventh Circuit has most thoroughly considered which screening procedures would sufficiently prevent any flow of confidential information from an "infected" attorney to any other member of his present firm. That circuit requires such a determination to be based on objective and verifiable evidence evaluated on a case-by-case basis. Factors to be considered "include, but are not limited to, the size and structural divisions of the law firm involved, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the 'infected' attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation." *Schiessle*, 717 F.2d at 421. The firm must have in place "specific institutional mechanisms" to block the flow of confidential information. *Id.; LaSalle*, 703 F.2d at 259.

■ We need not decide whether to adopt this exception in an appropriate case. The factors listed above simply are not present here. Although Nielsen and Senior has submitted affidavits which attest that no information has actually been disclosed nor access to either file permitted, no "specific institutional mechanisms" designed to prevent inadvertent disclosure were in place when the firm accepted the case. It

---

**2.** The recently adopted ABA Model Rules of Professional Conduct support a functional analysis of such conflicts of interest and oppose application of an irrebuttable presumption. *See* Model Rules of Professional Conduct Rules 1.9, 1.10, 1.11 (1983).

is at that point that the conflict arose, not when Clark Nielsen discovered that Anderson had previously represented Smith. Even after this discovery, no firmwide policies were promulgated to prevent the inadvertent flow of confidential information.

Moreover, no evidence has been offered that such mechanisms were in place at Boyden, Kennedy and Romney during Anderson's representation of Smith. The entire firm was therefore tainted by that representation and most of those attorneys subsequently joined Nielsen and Senior. The Seventh Circuit recently refused to permit rebuttal of the presumption when an entire law firm changed sides. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1267 (7th Cir.1983); *cf. Corrugated Container*, 659 F.2d at 1346–47.

Defendants argue, in effect, that conflicts of interest arising on appeal present less of a threat to client confidentiality than do conflicts perceived at the trial or pretrial stage. Since an appeal is based purely on evidence in the record, defendants assert that Anderson's presumed knowledge could not affect the present appeal. Whatever merit this argument has is outweighed here by the absence of institutional mechanisms to prevent or detect conflicts of this kind and the necessity of avoiding the appearance of impropriety. We note, moreover, that most appeals involve some issue that potentially could require reversal and retrial. In fact, in this case defendants seek a new trial as an alternative to outright reversal if they succeed on appeal. Should a reversal result in a new trial, Anderson's confidential knowledge would be highly relevant.

In sum, we express no view as to whether firmwide disqualification would be necessary if an effective prior screening procedure were used in an appropriate case because no such procedures were in place at Nielsen and Senior. The presumption of firmwide disclosure of confidential information about a matter substantially related to the present appeal requires the disqualification of the firm.

The motion to disqualify is granted. The brief and docketing statement filed by Nielsen and Senior are ordered stricken from the record on appeal.