940 F.2d 1538
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Peter H. JOHNSTONE, Personal Representative of the Estate of
Ivan S. Fragua, Deceased, Plaintiff-Appellant,
v.
DAIRYLAND INSURANCE COMPANY, Defendant-Appellee.
 No. 91-2043.
 United States Court of Appeals, Tenth Circuit.
 Aug. 12, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Appellant is aggrieved as the district court granted summary judgment to the opposition.
 
 
 3
 Both parties agree the significant facts are undisputed and they are accurately set forth in the district court's thorough Memorandum Opinion and Order. The facts will not be reiterated. We summarize the facts by stating there was a two car, head-on collision and people were killed in both cars. Mr. Herman (Plaintiff) was appointed personal representative of the deceased driver who was at fault. He was also appointed personal representative of the deceased driver who was not at fault and guardian of the minor passenger who was injured. For the sake of simplicity we will refer to the deceased, at-fault driver as the tort-feasor and the other deceased driver and her injured son as mother-son.
 
 
 4
 Mr. Herman commenced a suit in state court on behalf of mother-son against tort-feasor's estate. This suit is still pending and there has been, to our knowledge, no judicial determination of liability or of damages.
 
 
 5
 Mr. Herman, ostensibly on behalf of tort-feasor's estate, brought this action against tort-feasor's insurance carrier asking for damages in excess of the policy limits due to insurance carrier's bad faith refusal to settle mother-son's claim against tort-feasor. Mr. Johnstone was later substituted as the party-plaintiff and as the administrator of tort-feasor's estate.
 
 
 6
 The district court granted the insurance carrier's motion for summary judgment reasoning that, under New Mexico law, a bad faith claim may only be maintained between the carrier and its insured and in reality this action is being maintained by the mother-son, who were third parties to the insurance contract. The district court reached this conclusion in part because the same law firm represented both the tort-feasor and mother-son and represented that their interests are one and the same.
 
 
 7
 Paraphrasing Appellant's argument, he asks, "What else can I do?" He asserts he was appointed personal representative of tort-feasor's estate as he (representing mother-son) is a creditor of this estate. He states he is representing mother-son as he was mother's husband and son's father. He makes no argument of disputed facts nor of incorrect law. He simply states this suit was in fact brought on behalf of tort-feasor's estate.
 
 
 8
 The insurance carrier asserts this suit is premature, arguing in its brief to this court that a bad faith cause of action does not accrue until a judgment has been obtained against the insured in excess of the liability coverage. We are inclined to agree. In Torrez v. State Farm Mut. Auto. Ins. Co., 705 F.2d 1192, 1202 (10th Cir.1982), in deciding a case under the law of New Mexico (which is also the controlling law in this appeal), we held:
 
 
 9
 [T]he cause of action for bad faith by State Farm did not accrue until the judgment was final.... It was only then that the excess liability was established.
 
 
 10
 Appellant attempts to distinguish Torrez from the case before us by arguing that Torrez involved an assignment and the case was brought by a third party. We are not persuaded and believe the law is equally applicable to the facts now before us.
 
 
 11
 The judgment of the district court is AFFIRMED for the reason that we believe this suit to be premature. The mandate shall issue forthwith.
 
 APPENDIX
 IN THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF NEW MEXICO
 
 12
 Peter H. Johnstone, Personal Representative of the Estate of
 
 
 13
 Ivan S. Fragua, Deceased, Plaintiff,
 
 
 14
 v.
 
 
 15
 Dairyland Insurance Company, Defendant.
 
 No. 90-269-M Civil
 
 16
 Feb. 1, 1991.
 
 MEMORANDUM OPINION AND ORDER
 
 17
 This matter came on for consideration on defendant's motion to disqualify opposing counsel and motion for summary judgment, and plaintiff's motion for summary judgment. Having considered the motions and memoranda of the parties and being otherwise fully advised in the premises, I find that the motion to disqualify is not well taken and it will be denied. Plaintiff's motion for summary judgment is not well taken and it will also be denied. However, the defendant's motion for summary judgment is well taken and it will be granted.
 
 Undisputed Facts
 
 18
 This action arose out of a two-car, head-on automobile accident that occurred on August 3, 1989. Susie Herman and her passenger, Andrew Herman, were in one car. Ivan Fragua and his passenger, Paula Suazo, were in the other. At the time of the accident, Ivan Fragua was intoxicated and had pulled abruptly into the wrong, on-coming lane of traffic. As a result of the collision, Susie Herman, Ivan Fragua, and Paula Suazo died. Andrew Herman, who is a minor child, sustained personal injuries. The record does not reveal the nature or extent of Andrew's injuries.
 
 
 19
 Ron Herman is the administrator of the estate of Susie Herman and the guardian and next friend of Andrew Herman. In that same capacity, Ron Herman is a creditor of Fragua's estate. As a creditor, Ron Herman was also appointed as the personal representative of Fragua's estate in a probate proceeding pursuant to N.M.Stat.Ann. Secs. 45-3-203 and 45-1-201(19) (1978).
 
 
 20
 Fragua was insured as a permissive driver of the vehicle by Dairyland Insurance Company with liability limits of $25,000 per person and $50,000 per occurrence. Dairyland settled with the estate of Paula Suazo. Subsequently, an offer to settle with the Hermans within the remaining policy limits was made to Dairyland. However, the offer excluded settlement of subrogation rights that were held by a health care insurance carrier for Andrew Herman. Dairyland refused to settle the Hermans' claims unless all subrogation claims were also settled. Dairyland first denied, but since admitted, that the value of the Hermans' claims exceeds $25,000 each.
 
 
 21
 After settlement negotiations with Dairyland failed, Ron Herman initiated two lawsuits. Herman brought suit in State District Court as the personal representative and next friend of Susie and Andrew Herman against the estate of Ivan Fragua. Herman brought this second action in Federal District Court as personal representative of Fragua's estate against Dairyland Insurance Company alleging damages for bad faith insurance dealings and seeking a declaration that the insurance company must pay any judgment in excess of the policy limits. There has been no assignment from Fragua's estate to bring any claims against Fragua's insurer.
 
 
 22
 Ron Herman is legally represented by the law firm of Grisham and Lawless, P.A. in both actions. Grisham and Lawless, therefore, represent Fragua's estate in the federal action and the Hermans against Fragua's estate in the state court action. Fragua's estate is represented by attorney John Klecan in the state court action. After defendant's summary judgment motion was filed in this federal lawsuit, Peter Johnstone was substituted for Ron Herman as the administrator of Fragua's estate at the request of attorneys Grisham and Lawless. Grisham and Lawless remain the attorneys for Fragua's estate in the present federal action.
 
 Discussion
 I. Plaintiff's Motion for Summary Judgment
 
 23
 Based on the above facts, plaintiff moves for summary judgment on the issue of whether plaintiff is entitled to an order requiring Dairyland to pay any judgment awarded in excess of the policy limits. The relief that plaintiff seeks necessarily turns on the question of whether Dairyland's failure to settle the Hermans' claims constitutes bad faith under New Mexico law. The facts as outlined, though undisputed, establish only that Dairyland refused to settle with the Hermans. The material question of whether Dairyland acted in bad faith is not resolved. "Furthermore, no cause of action for bad faith by Dairyland can accrue until there is a final judgment against Fragua's estate exposing the estate to liability in excess of the policy. Torrez v. State Farm Mutual Automobile Insurance Co., 705 F.2d 1192, 1202 (10th Cir.1982). There is nothing in the record to indicate that a final judgment has been entered in the state court action. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." (emphasis original). 10A Wright, Miller, and Kane, Federal Practice & Procedure, Civ.2d Sec. 2739 (quoting Advisory Committee note to 1963 amendments to Fed.R.Civ.P. 56). Plaintiff's motion is, therefore, denied.
 
 II. Defendant's Motion to Disqualify
 
 24
 Defendant moves to disqualify Grisham and Lawless pursuant to the Rules of Professional Conduct, Rule 16-307 because attorney Grisham is listed as a witness for plaintiff in the present federal action and Rule 16-107 based on a conflict of interest in representing adverse parties simultaneously.
 
 
 25
 Rule 16-307 provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where (1) the testimony relates to an uncontested issue, or (2) the testimony relates to the nature and value of legal services rendered in the case." Neither exception applies in this case. The rule goes on to state that an associate attorney may act as trial advocate unless precluded by Rule 16-107, which addresses representation of adverse clients. In this case, although Mr. Grisham may be called as a witness, his associate Mr. Lawless will act as trial advocate. The pertinent question, therefore, is whether a conflict exists under Rule 16-107 as alleged by defendant.
 
 
 26
 The standard applied to a motion to disqualify based on simultaneous or prior representation of an adverse party is whether a "substantial relationship" exists between the two actions. Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir.1985). "Substantiality is present if the factual context of the two representations are similar or related." Id. (quoting Trone v. Smith, 621 F.2d 994, 998 (9th Cir.1980)). If a substantial relationship is found, a presumption arises that a client has revealed facts to the attorney that require his disqualification. Smith v. Whatcott, supra at 1100. The purpose is to protect client confidentiality and to avoid the appearance of impropriety. Id.
 
 
 27
 A substantial relationship appears to exist between the two actions in question. Both arise, to some extent, from the motor vehicle accident and subsequent events. However, keeping in mind that the underlying purpose of the rule is to protect client confidences, careful examination of this unusual set of circumstances distinguishes this case from Smith v. Whatcott and reveals no possibility of confidences being breached. Having died in the crash, Mr. Fragua revealed nothing to Grisham and Lawless that could be used against his estate in the state court action. Furthermore, the interests of Fragua's estate are in fact the interests of the Hermans in the present federal action, that is, to assure that any judgment in the Hermans' favor in the state court action is covered completely by Dairyland Insurance Company. Though highly unusual, I see no conflict that should preclude the Hermans' and Fragua's estates from being represented by Grisham and Lawless.
 
 III. Defendant's Motion for Summary Judgment
 
 28
 In the absence of disputed material facts, Dairyland moves for summary judgment on the issue of whether plaintiff's claim is barred by law. Under New Mexico law, a claim for bad faith dealing by an insurance company applies only between an insurer and its insured, not a third-party claimant. Chavez v. Chenoweth, 89 N.M. 423, 429, 553 P.2d 703, 709 (Ct.App.1976). Dairyland argues that even though the present federal action is brought nominally by Fragua's estate, it is in reality a suit by the Hermans and is barred because the Hermans were third-parties to the contract between Fragua and Dairyland. I agree. Neither Ron Herman nor Peter Johnstone have been given an assignment as required to bring claims against Fragua's insurer. See Torrez v. State Farm Mutual Automobile Insurance Co., supra at 1202. Ron Herman is a creditor of Fragua's estate by virtue of being the administrator of Susie Herman's estate and next friend of Andrew Herman. It was only Ron Herman's status as a creditor that allowed him to be appointed administrator of Fragua's estate and initiate this suit in its name.
 
 
 29
 The fact that Ron Herman was replaced as the administrator of Fragua's estate appears in this case to be a cosmetic change only. The change was requested by the Hermans' attorneys after they were on notice that Dairyland challenged the suit as one by a third party. Finally, Grisham and Lawless continue to represent Fragua's estate in this action and the Hermans in the state action on the contention that the interests are one and the same. I find that defendant's motion for summary judgment is well taken and it is, therefore, granted.
 
 
 30
 IT IS SO ORDERED.
 
 
 31
 /s/ Edwin L. Mechem
 
 SENIOR UNITED STATES DISTRICT JUDGE
 JUDGMENT
 
 32
 Having entered my memorandum opinion and order in this matter in favor of the defendant; Now, Therefore,
 
 
 33
 IT IS ORDERED, ADJUDGED and DECREED that the plaintiff take nothing, that the action is dismissed on the merits, and that the defendants shall recover their costs from the plaintiff.
 
 
 34
 37-2-1. What causes of action survive.
 
 
 35
 In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same. The cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor.
 
 
 36
 45-1-201. General definitions.
 
 
 37
 A. As used in the Probate Code and unless the context otherwise requires:
 
 
 38
 (1) "application" means a written request to the probate court for an order of informal probate or appointment under Sections 45-3-301 through 45-3-311 NMSA 1978;
 
 
 39
 (2) "beneficiary", as it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer and, as it relates to a charitable trust, includes any person entitled to enforce the trust;
 
 
 40
 (3) "child" includes any individual entitled to take as a child under the Probate Code by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild or any more remote descendant;
 
 
 41
 (4) "claims", in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person, whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, demands or disputes regarding title of a decedent or incapacitated person or minor ward to specific assets alleged to be included in the estate;
 
 
 42
 (5) "conservator" means a person who is appointed by a court to manage the property or financial affairs or both of an incapacitated person or a minor ward;
 
 
 43
 (6) "devise", when used as a noun, means a testamentary disposition of real or personal property and, when used as a verb, means to dispose of real or personal property by will;
 
 
 44
 (7) "devisee" means any person designated in a will to receive a devise. In the case of a devise to an existing trust or trustee, or to a trustee on trust described by will, the trust or trustee is the devisee and the beneficiaries are not devisees;
 
 
 45
 (8) "distributee" means any person who has received property of a decedent from his personal representative other than as a creditor or purchaser. A testamentary trustee is a distributee only to the extent of distributed assets or increment thereto remaining in his hands. A beneficiary of a testamentary trust to whom the trustee has distributed property received from a personal representative is a distributee of the personal representative. For purposes of this subsection, "testamentary trustee" includes a trustee to whom assets are transferred by will, to the extent of the devised assets;
 
 
 46
 (9) "estate" means the property of the decedent, trust or other person whose affairs are subject to the Probate Code as originally constituted and as it exists from time to time during administration;
 
 
 47
 (10) "general letters" means letters issued to a general personal representative;
 
 
 48
 (11) "fiduciary" includes personal representative, guardian, conservator or trustee;
 
 
 49
 (12) "foreign personal representative" means a personal representative of another jurisdiction;
 
 
 50
 (13) "formal proceeding" means one conducted before the district court with notice to interested persons;
 
 
 51
 (14) "general personal representative" includes an executor, administrator, successor personal representative and persons who perform substantially the same function under the law governing their status. The term does not include a special administrator;
 
 
 52
 (15) "guardian" means a person who has qualified to have the care, custody or control of the person of a minor or incapacitated person pursuant to testamentary or court appointment, but excludes one who is merely a guardian ad litem;
 
 
 53
 (16) "heirs" means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent;
 
 
 54
 (17) "incapacitated person" is as defined in Section 45-5-101 NMSA 1978;
 
 
 55
 (18) "informal proceedings" means those conducted without notice to interested persons, except as provided for in Section 45-3-306 NMSA 1978, before the probate court for probate of a will or appointment of a personal representative;(19) "interested person" includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a decedent, minor ward or incapacitated person which may be affected by the proceeding. It also includes personal representatives or, if not yet appointed, persons having priority for appointment as a personal representative and other fiduciaries representing interested persons. This definition does not apply to Sections 45-5-101 through 45-5-502 NMSA 1978;
 
 
 56
 (20) "issue" means all of a person's lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in the Probate Code;
 
 
 57
 (21) "letters" includes letters testamentary, letters of administration, letters of guardianship and letters of conservatorship;
 
 
 58
 (22) "limited guardian" is as defined in Section 45-5-101;
 
 
 59
 (23) "minor" means a person who has not reached the age of majority;
 
 
 60
 (24) "mortgage" means any conveyance, agreement or arrangement in which property is used as security;
 
 
 61
 (25) "nonresident decedent" means a decedent who was domiciled in another jurisdiction at the time of his death;
 
 
 62
 (26) "organization" includes a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal entity;
 
 
 63
 (27) "parent" includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under the Probate Code by intestate succession from the child whose relationship is in question, and excludes any person who is only a stepparent, foster parent or grandparent;
 
 
 64
 (28) "person" includes an individual, a corporation, an organization or any other legal entity;
 
 
 65
 (29) "personal representative" includes an executor, administrator, successor personal representative, special administrator and persons who perform substantially the same function under the law governing their status;
 
 
 66
 (30) "petition" means a written request to the district court for an order after notice;
 
 
 67
 (31) "property" includes both real and personal property or any interest therein and means anything that may be the subject of ownership;
 
 
 68
 (32) "protected person" is as defined in Section 45-5-101 NMSA 1978;
 
 
 69
 (33) "protective proceeding" is as defined in Section 45-5-101 NMSA 1978;
 
 
 70
 (34) "security" includes any note, stock, treasury stock, bond, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate or, in general, any interest or instrument commonly known as a security, or any certificate of interest, or participation, any temporary or interim certificate, receipt or certificate of deposit for or any warrant or right to subscribe to or purchase any of the foregoing;
 
 
 71
 (35) "settlement", in reference to decedent's estate, includes the full process of administration, distribution and closing;
 
 
 72
 (36) "special administrator" means a personal representative as described by Sections 45-3-614 through 45-3-618 NMSA 1978;
 
 
 73
 (37) "state" includes any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico or any territory or possession subject to the legislative authority of the United States;
 
 
 74
 (38) "successor personal representative" means a personal representative, other than a special administrator, who is appointed to succeed a previously appointed personal representative;
 
 
 75
 (39) "successors" means those persons, other than creditors, who are entitled to property of a decedent under his will or the Probate Code;
 
 
 76
 (40) "supervised administration" refers to the proceedings described in Sections 45-3-501 through 45-3-505 NMSA 1978;
 
 
 77
 (41) "testacy proceeding" means a proceeding to establish a will or determine intestacy;
 
 
 78
 (42) "trust" includes any express trust, private or charitable, with additions thereto, wherever and however created. It also includes a trust created or determined by judgment or decree under which the trust is to be administered in the manner of an express trust. Trust excludes other constructive trusts, and it excludes resulting trusts, conservatorships, personal representatives, trust accounts, custodial arrangements including those created under the Uniform Gifts to Minors Act, business trusts providing for certificates to be issued to beneficiaries, common trust funds, voting trusts, security arrangements, liquidation trusts and trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions or employee benefits of any kind, and any arrangement under which a person is nominee or escrowee for another;
 
 
 79
 (43) "trustee" includes an original, additional or successor trustee, whether or not appointed or confirmed by court;
 
 
 80
 (44) "ward" is as defined in Section 45-5-101 NMSA 1978;
 
 
 81
 (45) "will" includes codicil and a testamentary instrument which merely appoints an executor or revokes or revises another will, and excludes holographic wills; and
 
 
 82
 (46) "guardian ad litem" means a person appointed by the district court before litigation to represent and protect the interests of the minor or incapacitated person.
 
 
 83
 B. The definitions found in Subsection A of this section are made subject to additional definitions contained in subsequent articles which are applicable to specific articles.
 
 
 84
 45-3-104. Claims against decedent; necessity of administration.
 
 
 85
 A. No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative. After the appointment and until distribution, all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by Sections 3-101 through 3-1204 [45-3-101 to 45-3-1204 NMSA 1978]. After distribution a creditor whose claim has not been barred may recover from the distributees as provided in Section 3-1004 [45-3-1004 NMSA 1978] or from a personal representative individually liable as provided in Section 3-1005 [45-3-1005 NMSA 1978].
 
 
 86
 B. Subsection A of this section shall have no application to a proceeding by a secured creditor of the decedent to enforce his right to his security except as to any deficiency judgment which might be sought therein.
 
 
 87
 45-3-203. Priority among persons seeking appointment as personal representative.
 
 
 88
 A. Whether the proceedings are formal or informal, persons who are not disqualified have priority for appointment in the following order:
 
 
 89
 (1) the person with priority as determined by a probated will including a person nominated by a power conferred in a will;
 
 
 90
 (2) the surviving spouse of the decedent who is a devisee of the decedent;
 
 
 91
 (3) other devisees of the decedent;
 
 
 92
 (4) the surviving spouse of the decedent;
 
 
 93
 (5) other heirs of the decedent; and
 
 
 94
 (6) on application or petition of an interested person other than a spouse, devisee or heir, any qualified person.
 
 
 95
 B. An objection to an appointment can be made only in formal proceedings. In case of objection the priorities stated in Subsection A of this section apply except that:
 
 
 96
 (1) if the estate appears to be more than adequate to meet exemptions and costs of administration but inadequate to discharge anticipated unsecured claims, the court, on petition of creditors, may appoint any qualified person;
 
 
 97
 (2) in case of objection to appointment of a person other than one whose priority is determined by will by an heir or devisee appearing to have a substantial interest in the estate, the court may appoint a person who is acceptable to heirs and devisees whose interests in the estate appear to be worth in total more than half of the probable distributable value of the estate, or, in default of this accord, any suitable person.
 
 
 98
 C. A person entitled to letters under Paragraphs (2) through (5) of Subsection A of this section, or a person who has not reached his age of majority and who might be entitled to letters but for his age, may nominate a qualified person to act as personal representative and thereby confer his relative priority for appointment on his nominee. Any person who has reached his age of majority may renounce his right to nominate or to an appointment by appropriate writing filed with the court. When two or more persons share a priority, those of them who do not renounce must concur in nominating another to act for them, or in applying for appointment.
 
 
 99
 D. Conservators of the estates of protected persons, or if there is no conservator, any guardian except a guardian ad litem of a minor or incapacitated person, may exercise the same right to nominate, to object to another's appointment, or to participate in determining the preference of a majority in interest of the heirs and devisees that the protected person or ward would have if qualified for appointment.
 
 
 100
 E. Appointment of one who does not have highest priority, including highest priority resulting from renunciation or nomination determined pursuant to this section, may be made only in formal proceedings. Before appointing one without highest priority, the court must determine that those having highest priority, although given notice of the proceedings, have failed to request appointment or to nominate another for appointment, and that administration is necessary.
 
 
 101
 F. No person is qualified to serve as a personal representative who is:
 
 
 102
 (1) under the age of majority;
 
 
 103
 (2) a person whom the court finds unsuitable in formal proceedings; or
 
 
 104
 (3) a creditor of the decedent, unless the appointment is to be made after forty-five days have elapsed from the death of the decedent.
 
 
 105
 G. A personal representative appointed by a court of the decedent's domicile has priority over all other persons except where the decedent's will nominates different persons to be personal representatives in New Mexico and in the state of domicile. The domiciliary personal representative may nominate another, who shall have the same priority as the domiciliary personal representative.
 
 
 106
 H. This section governs priority for appointment of a successor personal representative but does not apply to the selection of a special administrator.
 
 
 107
 45-3-703. General duties; relation and liability to persons interested in estate; standing to sue.
 
 
 108
 A. A personal representative is under a duty to settle and distribute the estate of a decedent in accordance with the terms of any probated and effective will and the Probate Code, and as expeditiously and efficiently as is consistent with the best interests of the estate. He shall use the authority conferred upon him by the Probate Code, the terms of the will, if any, and any order in proceedings to which he is party for the best interests of successors to the estate.
 
 
 109
 B. A personal representative shall not be surcharged for acts of administration or distribution if the conduct in question was authorized at the time. Subject to other obligations of administration, an informally probated will is authority to administer and distribute the estate according to its terms.
 
 
 110
 C. An order of appointment of a personal representative, whether issued in informal or formal proceedings, is authority to distribute apparently intestate assets to the heirs of the decedent if, at the time of distribution, the personal representative is not aware of:
 
 
 111
 (1) a pending testacy proceeding;
 
 
 112
 (2) a proceeding to vacate an order entered in an earlier testacy proceeding;
 
 
 113
 (3) a formal proceeding questioning his appointment or fitness to continue; or
 
 
 114
 (4) a supervised administration proceeding.
 
 
 115
 D. Nothing in this section affects the duty of the personal representative to administer and distribute the estate in accordance with the rights of claimants, the surviving spouse, any minor and dependent children and any pretermitted child of the decedent.
 
 
 116
 E. Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in New Mexico at his death has the same standing to sue and be sued in the courts of New Mexico and the courts of any other jurisdiction as his decedent had immediately prior to death.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3