**HUNTER DOUGLAS, INC., and Thermocell, Ltd., Plaintiffs,**

v.

**HOME FASHIONS, INC., Defendant.**

**Civ. A. No. 91–F–2050.**

United States District Court, D. Colorado.

Oct. 14, 1992.

---

Donald E. Phillipson, William N. Medlock, Davis, Graham & Stubbs, Denver, CO and Thomas L. Secrest, and Duane–David Hough, Fish & Neave, New York City, for plaintiffs Hunter Douglas, Inc. and Thermocell, Ltd.

Steve A. Mains, Dorr Carson Sloan & Peterson, Denver, CO and Steven L. Underwood, Michael O. Warnecke, and David R. Melton, Keck, Mahin & Cate, Chicago, IL for defendant Home Fashions, Inc.

## ORDER REGARDING MOTION TO DISQUALIFY LAW FIRM

SHERMAN G. FINESILVER, Chief Judge.

Patent infringement is the subject of this case. Jurisdiction is based on 28 U.S.C.A. § 1331 (West Supp.1992). This matter comes before the Court on Plaintiffs' Motions to Disqualify the law firm of Keck, Mahin & Cate, to Stay Discovery, and for Leave to File a Brief in Support of Those Motions filed August 21, 1992. By Minute Order filed August 24, 1992, this Court denied the motion to stay discovery. This matter has been fully briefed by the litigants and a hearing was held on September 16, 1992. For the reasons stated herein, Plaintiffs' Motion to Disqualify the law firm of Keck, Mahin & Cate, filed August 21, 1992, is DENIED.

### I.

Plaintiff Hunter Douglas, Inc., as patent holder, and Plaintiff Thermocell, Ltd., as assignee, seek declaratory and injunctive relief and damages, for alleged patent infringements by Defendant Home Fashions, Inc. The patent in question involves honeycomb insulating material. Defendant has counterclaimed for declarations of non-infringement, patent invalidity, and patent unenforceability.

In late July 1992, Martin Fleit, Esq. and George Lewis, Esq. joined the law firm of Keck, Mahin & Cate ("Keck") in their Washington D.C. office. Keck, through its Chicago office, represents Defendant Home Fashions in this patent dispute. Mr. Fleit and Mr. Lewis are not counsel of record for Defendant in this case and are not participating in the representation of Home Fashions.

Before joining Keck, Mr. Fleit and Mr. Lewis were attorneys with the law firm of Fleit, Jacobson, Cohn, Price, Holman & Stern ("Fleit Jacobson"). While associated with Fleit Jacobson, Mr. Fleit represented Plaintiff Hunter Douglas in patent matters and Mr. Lewis represented Hunter Douglas in trademark matters. As a result of Mr. Fleit's and Mr. Lewis' prior representation of Hunter Douglas, plaintiffs seek to disqualify the entire Keck firm from representing Defendant Home Fashions in this case. Keck argues that no confidential information related to this suit has been learned by Mr. Fleit or Mr. Lewis and that, in any event, they have been effectively screened from this matter.

### II.

General principles of law and the Court's prior cases on attorney disqualification, *FDIC v. Sierra Resources, Inc.*, 682 F.Supp. 1167 (D.Colo.1987), and *Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.*, 421 F.Supp. 1348, 1351 (D.Colo.1976) (*"Greenebaum"*), recognize that the decision to disqualify rests with the sound discretion of the trial court. A literal reading of the disciplinary rules relating to conduct by attorneys (Canons 4 and 5) is not required, but an approach that focuses on fairness is to be applied. *Id.* See also *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir.1984) (*"Gygi"*). As this Court noted in *Greenebaum*, federal courts are not statutorily obligated to apply the disciplinary rules of

**568**

any state.[1] *Greenebaum*, 421 F.Supp. at 1351. The Court will endeavor, however, to apply the disciplinary rules in a spirit of fairness. *Id.* The *Greenebaum* and *Sierra Resources* decisions involved attorneys who would be called to testify, a situation not raised here.

■ The moving party has the burden of establishing sufficient grounds for disqualification. *People ex rel. Woodard v. District Court*, 704 P.2d 851, 853 (Colo.1985) (*en banc*) ("*Woodard*"). Specific facts must be alleged to support a disciplinary violation. *Id.*

### III.

■ At the outset, it should be recognized that courts must closely guard against potential breaches of client confidentiality. Attorneys should not be permitted to associate themselves with clients, learn technical and confidential information, and then abandon the client only to associate with a competitor. Associating with a competitor may give rise to definite pressures to breach the former client's expectation of confidentiality. At the same time, attorney mobility is an accepted part of today's legal profession. Other considerations include the substantial additional cost and time delays associated with the education of new counsel should a law firm be disqualified. Therefore, questions of disqualification necessarily turn on a balancing of interests. In close cases, it is preferable to resolve these disputes in such a way as to allow attorney mobility without sacrificing concerns for confidentiality and efficiency.

### Canon 5

The pertinent provision of Canon 5, DR 5–105, provides that, unless each client consents after full disclosure,

> [a] lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be

adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests....

The case of *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578 (Fed.Cir.1989), is helpful in analyzing the legal principles involved in this case, although it involved a **merger** of two firms. In *Picker*, the Court affirmed the disqualification of the merged law firm. *Picker*, 869 F.2d at 584. By failing to properly withdrawal, as required by the local rules of court, from representing one client before merging with the new law firm, the merged law firm represented two clients opposite each other in an existing case in violation of Canon 5. *Picker*, 869 F.2d at 583.

In *Gygi*, the Court affirmed the disqualification of an attorney who concurrently represented two clients on completely unrelated matters. *Gygi*, 749 F.2d at 622. The Court's decision was grounded in an attorney's obligation of absolute loyalty mandated by DR 5–105, rather than similarities in representation. *Id.* at 622.

*Picker* may be distinguished from the case at bar because here Mr. Fleit and Mr. Lewis failed to file the necessary withdrawal documents in accordance with the Patent and Trademark Office regulations (37 C.F.R. §§ 1.36, 2.19 and 10.40), not the Local Rules of this Court.[2] Mr. Fleit and Mr. Lewis did, however, notify Hunter Douglas of the fact that they would discontinue handling their patent and trademark needs. The Hunter Douglas files were transferred to other attorneys in Fleit Jacobson, Mr. Fleit and Mr. Lewis' former firm. Hunter Douglas apparently retained the entire firm of Fleit Jacobson for representation regarding patent and trademark work with an understanding that Mr. Fleit and Mr. Lewis would be primarily responsible in that representation. This is supported by the fact that in at least one Application for Trademark Registration, Hunter Douglas appointed fourteen attor-

---

1. Pursuant to Local Rule 306 (updated December 1985), this Court has adopted the Code of Professional Responsibility as the standard of professional conduct.

2. Mr. Fleit and Mr. Lewis remain attorneys of record in the Patent and Trademark office.

neys of Fleit Jacobson and authorized correspondence to the firm of Fleit Jacobson.

Unlike in *Picker* and *Gygi*, no merger occurred when Mr. Fleit and Mr. Lewis left Fleit, Jacobson and joined Keck. The Fleit, Jacobson firm continued to represent Hunter Douglas, while Mr. Fleit and Mr. Lewis withdrew, at least informally, from that representation. Hunter Douglas was the firm's client and Mr. Fleit and Mr. Lewis withdrew from the firm before joining Keck. Therefore, Hunter Douglas never became a client of Keck and no technical violation of DR 5–105 exists. Canon 4 should still be consulted.

### Canon 4

■ DR 4–101 prohibits the disclosure of a client's confidential information learned during a former representation. Disqualification under this rule depends on whether a substantial relationship exists between this suit and the previous representation of Hunter Douglas by Mr. Fleit and Mr. Lewis. *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985). *See also Food Brokers, Inc.*, 680 P.2d 857, 858 (Colo.App.1984). The factual contexts of each representation determine whether a substantial relationship exists. *Smith*, 757 F.2d at 1100. Once a substantial relationship is found, an **irrebuttable** presumption arises that Hunter Douglas revealed confidential information to Mr. Fleit and Mr. Lewis. *Id.* Existence of a substantial relationship also triggers a **rebuttable** presumption that Mr. Fleit and Mr. Lewis shared the confidential information with Keck, thus disqualifying the entire firm. *Id.* at 1101. Allegations that a substantial relationship exists between the former representation and this case cannot rest on surmise conjecture or mere speculation.

Clearly, Plaintiff has failed to make the most basic showing that Mr. Lewis was previously involved in matters substantially related to this suit. Plaintiff contends that Mr. Lewis was significantly involved in pursuing several trademark applications on its behalf. None of these applications involve the honeycomb insulation which is the subject of this dispute. Hunter Doug-

las has failed to allege specific facts supporting disqualification as required by *Woodard*. Therefore, disqualification of the Keck firm cannot be based on Mr. Lewis' previous representation of Hunter Douglas.

■ On the other hand, although it is far from clear, it appears that Mr. Fleit may have had brief direct involvement in matters substantially related to this case while representing Hunter Douglas. Hunter Douglas alleges that Mr. Fleit obtained a copy of a letter from Mr. Hill of Hunter Douglas to Fish & Neave which disclosed possible patent infringements by Home Fashions. Additionally, Mr. Fleit allegedly toured Hunter Douglas' facilities where he learned confidential information relating to Hunter Douglas' machinery and processes for making honeycomb insulation.

Mr. Fleit admits signing a confidentiality agreement relating to those visits, but says that he does not know whether he obtained information related to this case. Mr. Fleit states that he has never done any substantive work on the '072 patent which is the subject of this litigation. Mr. Fleit admits that he met with Mr. Jansen on June 4 and 5, 1992, to work on Hunter Douglas' patent applications, but he has no recollection of any discussion related to this case. Although plaintiffs provide no formal documentation, they allege that Mr. Fleit is attorney of record in the '072 patent application which is the subject of this lawsuit and has confidential information related to that application. Plaintiffs also suggest and Mr. Fleit denies that he discussed settlement strategy in this case with Hunter Douglas' litigation counsel.

Although a closer case is presented here than with respect to Mr. Lewis, the Court concludes that Mr. Fleit did not represent Hunter Douglas in matters substantially related to this case. If Mr. Fleit had represented Hunter Douglas in matters substantially related to this case, two presumptions would be appropriate. *Smith*, 757 F.2d at 1100–01. First, it would be irrebuttably presumed that Hunter Douglas disclosed

confidential information to Mr. Fleit.[3] Second, it would be rebuttably presumed that Mr. Fleit has shared this confidential information thus disqualifying the entire Keck firm.

The *Smith* court indicated a willingness to allow rebuttal of the latter presumption with evidence of specific pre-existing institutional mechanisms that effectively screened the attorney from the current case. *Smith*, 757 F.2d at 1100. Relevant factors in evaluating purported screening procedures include:

> "the size and structural divisions of the law firm involved, the likelihood of contact between the "infected" attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the "infected" attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation."

*Id.* at 1101 (quoting *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983). Although ineffective until January 1, 1993, the Colorado Rules of Professional Conduct generally support this approach. *See* The Colorado Rules of Professional Conduct Rules 1.9, 1.10 and accompanying comments (May 7, 1992).

Even if Mr. Fleit had represented Hunter Douglas in matters substantially related to this case, it is this Court's view that the Keck firm has effectively screened Mr. Fleit from this case in accordance with the guidelines set forth in *Smith*. Mr. Fleit is physically separated from Home Fashions' litigation counsel. Mr. Fleit is located in Keck's Washington D.C. office while all files and litigation counsel related to this suit are located in Keck's Chicago office. It is unlikely that Mr. Fleit will have contact with the attorneys and staff responsible for litigating this case.

The Court was impressed with the testimony of Mr. Clarence O. Redman, Chief Executive Officer of Keck. According to Mr. Redman, the Keck firm has significant screening procedures to protect against disclosure of confidences.[4] Before Mr. Fleit moved into Keck's Washington office, he signed two written acknowledgments of Keck's screening procedures. Firm wide screening memoranda were circulated informing all personnel that Mr. Fleit is to be screened from any contact with Hunter Douglas, and materials related to Hunter Douglas. "All firm personnel are prohibited from discussing any aspect of any matter concerning" Hunter Douglas with Mr. Fleit. Reminder notices are circulated periodically. Mr. Fleit is a non-equity partner in Keck and his compensation for 1992 and 1993 is fixed. It does not appear that Mr. Fleit will share in any fees secured as a result of Keck's representation of Home Fashions. Therefore, the Keck firm has sufficient mechanisms which comply with the guidelines set forth in *Smith* and the spirit of the disciplinary rules. The Keck firm should not be disqualified.

## IV. ORDER

ACCORDINGLY, IT IS ORDERED THAT:

1) Plaintiffs' Motion to Disqualify the law firm of Keck, Mahin & Cate, filed August 21, 1992, is DENIED.

2) Martin Fleit, Esq. and George Lewis, Esq. comply with the formal withdrawal procedures of the Patent and Trademark office on all matters which they formerly represented Hunter Douglas.

3) Martin Fleit, Esq. and George Lewis, Esq. are prohibited from directly or indirectly sharing in the fees paid, in whatever form, by Home Fashions to Keck, Mahin & Cate in connection with this litigation.

4) Martin Fleit, Esq. and George Lewis, Esq. are prohibited from sharing, either

---

**3.** It is undisputed that Mr. Fleit and Mr. Lewis are prohibited from representing Home Fashions in this litigation.

**4.** All of these procedures were followed with respect to Mr. Lewis as well as Mr. Fleit. There-

fore, even if this Court concluded that Mr. Lewis had involvement in matters substantially related to this case, he has been effectively screened.

informally or formally, orally or in writing, or in any other way, any information which they may have which is in any way related to this case with any person associated in any way with the law firm of Keck, Mahin & Cate.

5) The screening procedures adopted and implemented by the law firm of Keck, Mahin & Cate with respect to Martin Fleit, Esq. and George Lewis, Esq., as represented in pleadings, motions, affidavits and depositions in this case, shall remain in full force and effect until this case is terminated, including any appellate proceedings.

6) Every file or document relating to Hunter Douglas originally in the possession, custody, or control of Martin Fleit, Esq. or George Lewis, Esq. and now in the possession of Martin Fleit, George Lewis or Keck, Mahin & Cate shall be returned no later than **Friday, October 30, 1992,** to Hunter Douglas or to other counsel at the election of Hunter Douglas.