[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECEMBER ON MOTION TO DISQUALIFY
This is a motion by the plaintiff to disqualify counsel for the defendant from representing the defendant pursuant to Rule 1.9 of the Rules of Professional Conduct. Defense counsel is Day, Berry and Howard (DBH). In the case the complaint alleges:
(1) that the defendant Advest fraudulently, recklessly and negligently made false representations to the plaintiff in March 1993 that it would help her get a mortgage so she could buy a house.
(2) that these representations gave rise to a contract which the defendant breached by failing to secure a loan in a reasonable time.
(3) that Advest breached its employment agreement with the plaintiff by reporting income to the Internal Revenue Service which it had not paid her. The employment agreement was entered into in December of 1989.
(4) Advests misrepresentations about helping the plaintiff secure a loan constituted a CUTPA violation.
The factual basis of the Rule 1.9 claim is set forth in the plaintiff's November 15, 1994 memorandum which the court will paraphrase.
On December 15, 1989 Ms. Jorgensen resigned from her job with Shearson Lehman Hutton, Inc. and entered into an employment agreement with the defendant Advest, Inc. She began working as an Associate Vice President, in December 1989.
Shearson commenced an action in the United States District Court against Ms. Jorgensen claiming that she violated the Connecticut Uniform Trade Secrets Act by retaining its proprietary information, in particular, a list of clients with whom she had worked. Shearson also claimed that Ms. Jorgensen breached a fiduciary duty owed to it by soliciting Shearson clients prior to her resignation from the firm. The matter was subsequently arbitrated before the New CT Page 2033 York Stock Exchange pursuant to an arbitration clause contained in Ms. Jorgensen's Employment Agreement with Shearson.
DBH represented Ms. Jorgensen in defense of the claims asserted by Shearson. At all times during the course of the representation, Ms. Jorgensen claims that she regarded her relationship with DBH as a true attorney-client relationship in which she could communicate with the firm in complete confidence.
In the course of the representation, Ms. Jorgensen provided DBH with facts relevant to those claims asserted by Shearson. Specifically she claims to have provided DBH with her "book of business", i.e. information regarding her work habits, the manner in which she conducted her business, the manner in which she solicited clients as well as the methods she used in maintaining customer contacts. These claimed attorney-client communications also included extensive preparation and strategy sessions concerning the claims asserted against Ms. Jorgensen by Shearson.
On September 6, 1994, Ms. Jorgensen terminated her employment with Advest.
On September 12, 1994, Ms. Jorgensen commenced this action against Advest setting forth claims of misrepresentation, breach of contract and violations of the Connecticut Unfair Trade Practices act ("CUTPA"). On the same date, Ms. Jorgensen also filed a claim with the New York Stock Exchange ("NYSE") setting forth essentially identical claims.
On September 23, 1994, DBH appeared on behalf of defendant Advest. On September 24, 1994, defendant filed a Motion to Stay the Proceedings pending arbitration of the claims before the NYSE. Although Advest has not yet filed a responsive pleading in this action, it has filed a response to Ms. Jorgensen's NYSE claims. In the NYSE counterclaim, Advest claims, among other things, that Ms. Jorgensen used Advest's proprietary information for her own benefit and that she breached her fiduciary duty to Advest by contacting its customers prior to her resignation from Advest.
Ms. Jorgensen now alleges that the claims being asserted by Advest are nearly identical to those claims which Day, CT Page 2034 Berry Howard defended on behalf of Ms. Jorgensen in 1989, involving the same issues and the same relevant information concerning her book of business and the manner in which she conducts business. Based on these factual allegations the plaintiff moves the court to disqualify DBH from defending this action based on its prior representation of the plaintiff.
The plaintiff bases her motion to disqualify on Rule 1.9 of the Rules of Professional Conduct. Rule 1.10 is referred to as a basis for extending the Rule 1.9 claim to the whole firm.
 I.
Rule 1.19 reads as follows:
 "A lawyer who has formerly represented a client in a matter shall not thereafter:
 a) Represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."
The motion to disqualify must be analyzed from two different perspectives due to the way it has been presented.
The first issue is whether, given the specific nature of the allegations made in the complaint in this case, should DBH be disqualified because during prior representation of the plaintiff DBH attorneys received the "Confidential communications" that have been identified by the plaintiff in order to represent her in the Shearson claim?
Apart from that question, the next issue then becomes whether given the nature of the counterclaim in the matter before the NYSE, DBH should be disqualified in the case now before the court because the above referenced "confidential CT Page 2035 communications" are directly related to and can be used against the plaintiff in the prosecution of the counterclaim before the NYSE.
(1.)
In deciding on the appropriate application of Rule 1.9 it is necessary to understand its purpose. An important purpose of the Rule is to maintain public confidence in the legal system. It is obvious that such confidence is damaged when lawyers appear to use prior relationships with clients to that client's disadvantage. Rule 1.9 has been described then as "a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against . ." the client, In re Conn. Derivatives Antitrust Litigation, 748 F.2d 157,162 (CA 3, 1984), see also, Brennan's Inc. v. Brennan'sRestaurants, Inc., 590 F.2d 168, 172 (CA 5, 1979), Prisco v.Westgate Entertainment, 799 F. Sup. 266, 270 (D. Conn. 1992).
Under Rule 1.9 the plaintiff moving to disqualify has three burdens:
 1) She and DBH had a prior client attorney relationship.
 2) The interests of DBH's current client are adverse to the plaintiff.
 3) The matters involved in the instant case are substantially related to the matters for which DBH previously represented the plaintiff.
See, Koch v. Koch Industries, 798 F. Sup. 1525, 1532 (D. Kan. 1992), Evans v. Artek Systems Corp., 715 F.2d 788, 791 (CA 2, 1983), Prisco v. Westgate Entertainment, Inc., supra, p. 269.
The first two requirements have been met. The third requirement presents the difficulty. Is the prior representation and anything that could have possibly been learned from the plaintiff substantially related to matters in the instant action. The Koch case, indicates that two distinct versions of the "substantially related" test have emerged, 798 F. Supp. at page 1533.
"The first version, adopted by a majority of the CT Page 2036 courts, compares the `matters' or factual contexts of the prior and present representations. The Tenth Circuit has followed this majority rule. `Substantiality is present if the factual contexts of the two representations are similar or related; Smith v. Whatcott, 757 F.2d 1098, 1100 (CA 10, 1985). . . . .
 . . . The second version adopted by the Second Circuit imposes a higher standard. A substantial relationship must be `patently clear' and requires disqualification `only when the issues involved have been `identical' or `essentially the same', Government of India v. Cook Industries, Inc., 569 F.2d 737, 741 (CA 2, 1978). . . The difference between these two versions is with what is examined in the two representations — factual context versus issues — and with what is expected from the movant's proof — a similarity or relatedness versus a `patently clear' relationship."
Connecticut has adopted the Second Circuit version of the substantial relationship test, Bergeron v. Mackler, 225 Conn. 391,399; State v. Binkley, 202 Conn. 629, 652 (1987).
To sum up: "A major purpose of Rule 1.9 in addition to the maintenance of public confidence . . . is to limit a lawyer's use of a client's confidential information in subsequent litigation. This purpose refines the substantialrelationship test to determine what confidential informationwas in a position to receive from the former client, and whatrelevance this information could have in the current case,"Prisco v. Westgate Entertainment, Inc., 799 F. Supp. at p. 270, also see LaSalle National Bank v. County of Lake, 703 F.2d 252,255 (CA 7, 1983 (emphasis added.)
Applying either version of the substantial relationship test as set forth in Koch it is clear that even a cursory reading of the complaint and the plaintiff's affidavit make it quite evident that there is no substantial relationship between the instant case and the prior representation of this plaintiff. This complaint concerns alleged broken agreements between the plaintiff and the defendant regarding the purchase of a house and incorrect reporting of her income. What can these factual allegations have to do with prior accusations by CT Page 2037 the plaintiff's former employer that she solicited their clients and retained a list of their clients? To ask the question provides the answer. There can be no valid reason to disqualify DBH from representing Advest in this case because DBH represented the plaintiff in a completely unrelated matter in a suit brought by a former employer.
(2.)
The second issue revolves around the fact that the plaintiff also filed a claim before the NYSE making the same allegations as she does in the instant case. Advest responded with a counterclaim alleging the plaintiff used proprietary information for her own benefit and breached her fiduciary duty to Advest by contacting its customers prior to her resignation from Advest. In her brief, the plaintiff asserts the NYSE counterclaim is nearly identical to claims which DBH defended on behalf of the plaintiff against Shearson. In her affidavit at paragraphs 8 and 9, the plaintiff asserts while DBH represented her she provided the firm "with facts relevant to those claims" by Shearson. "In particular" she says she provided her "book of business, i.e. information regarding my work habits, the manner in which I conducted my business, the manner in which I solicited clients as well as the methods I used in maintaining customer contacts." She also had strategy sessions with DBH lawyers regarding the Shearson claims. Since Advest was also sued by Shearson query how much it already knew about the matters referred to as confidential?
But I will accept for purposes of discussion that the matters involved in the prior representation are substantially related to those involved in the NYSE counterclaim.
That, however, has nothing to do with the propriety of DBH representing Advest in this case where no similar counterclaim has been filed by Advest. If Advest were to file such a claim I or another judge can deal with the propriety of DBH remaining in the suit while advancing that counterclaim. But I fail to see and the plaintiff has failed to point out how the filing of the counterclaim in another state before the NYSE will disadvantage her in the prosecution of the instant case against Advest given the specific claims here.
What's before me is a motion to disqualify in this case. Even if for the purposes of discussion it is conceded that DBH CT Page 2038 shouldn't be the law firm to prosecute the counterclaim before the NYSE in light of its prior representation of the plaintiff that in itself has nothing to do with the propriety of DBH's representation in this case. I don't sit as some roving grievance committee ready to punish Advest by taking away their lawyer in a case before me because of some alleged impropriety committed by their lawyer in another jurisdiction as to a claim which has nothing to do with the defense or prosecution of a claim against Advest in this court.
I am not even sure of the NYSE rules in a situation like this. If the plaintiff believes she has a claim for relief under Rule 1.9 before the NYSE she should present that claim to the Exchange for a ruling before further proceedings there. Their action or failure to act I assume can be appealed after the final award. She may even have a right to go into the New York courts to stay arbitration before the Exchange until her Rule 1.9 claim is aired. But I do not believe she has standing to come to our courts to deal with what she claims is an injustice that can only prejudice here in another jurisdiction.[1]
The motion to disqualify is denied.
Corradino, J.