**Gage and Barbara BEHUNIN, et al., Plaintiffs,**

**v.**

**DOW CHEMICAL COMPANY, et al., Defendants.**

**Civ. A. No. 86–K–281.**

United States District Court, D. Colorado.

Aug. 21, 1986.

James A. Clark, Darwin Poyfair, Baker & Hostetler, Denver, Colo., for Gage and Barbara Behunin, Gage Behunin Co. Inc.

Leonard L. Rivkin, James B. Rather, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., J. Richard Hoel, Jr., Dale R. Crider, Hillary Anschel, Bruce D. Drucker, Rivkin, Radler, Dunne & Bayj, Chicago, Ill., Michael L. O'Donnell, White & Steele, Denver, Colo., for Dow Chemical Co., Dow Chemical USA, AMSPEC, INC., AR. Douglas Eash, Dallas Grenley, Henrey W. Kirchner, L.Z. Lamoria, Don Dirkse and Delmer Moeller.

Garth Rogers, Donald E. Johnson, Allen, Rogers Metcalf & Vahrenwald, Fort Collins, Colo., Alfred H. Edwall, Jr., Kristin N. Lockhart, Robert J. Tansey, Jr., Janet Pollish-Forsberg, William E. Dorigan, Dennis E. Oslund, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Savings Bldg. Condominiums Ass'n., Home Federal Sav. & Loan Ass'n of the Rockies, Eleventh Floor Associates, Eighth Floor Ownership Group,

Shem 7, Weibel & Hendrick, Inc., Gene E. Fischer, Stephen Howard, Steven G. Francis and Timothy Hasler.

Walter A. Steele, Michael L. O'Donnell, Sandra L. Spencer, James M. Dieterich, White & Steele, P.C., Denver, Colo., Bruce D. Drucker, J. Richard Hoel, Jr., Hillary Anschel, Dale R. Crider, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., for Dow Chemical Co.

Frank D. Plunkett, Jr., Richard E. Young P.C., Denver, Colo., Robert J. Tansey, Jr., William E. Dorigan, David E. Oslund, Janet Pollish-Forsberg, Kristin N. Lockhart, Alfred H. Edwall, Jr., Robbins, Zelle, Larson & Kaplan, Minneapolis, Minn., for C.A. Associates.

A. Craig Fleishman, Haligman, Zall, Lottner, Englewood, Colo., Alfred H. Edwall, Jr., Janet Pollish-Forsberg, Kristin N. Lockhart, David S. Oslund, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Blaine Chase, C. Alan Hackstaff and Robert Hackstaff.

Wiley Daniel, Gorsuch, Kirgis, Campbell Walker & Grover, Denver, Colo., Robert Tansey, William Dorigan, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Franklin L. Burns and Burns Enterprises, Inc.

Robert Connelly, Issacson, Rosenbaum, Woods, Levy, & Snow, Denver, Colo., Robert J. Tansey, Jr., William E. Dorigan, Robbins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Penn Square Condominium Ass'n.

## ORDER

KANE, District Judge.

This case involves the Dow product Sarabond, purported to increase the bond strength between brick and mortar. Sarabond permits the economical and expeditious off-site pre-fabrication of brick panels. Plaintiffs contend, in their February 18, 1986 complaint, Sarabond causes severe corrosion of metal girders to which it is exposed. Among plaintiffs' theories of recovery are strict products liability, negligence, fraud and violation of the Racketeer Influenced Corrupt Organization Act (RICO). Compensatory, punitive and treble damages are sought. I exercize jurisdiction under 28 U.S.C. §§ 1331, (federal question), and 1332, (diversity of citizeship). Venue is proper pursuant to 28 U.S.C. § 1391.

Now before me is Dow's June 6, 1986 motion to disqualify plaintiffs' attorneys, Anderson, Campbell and Laugesen, and for other relief. Dow asserts that ACL's representation of plaintiffs after having previously represented it constitutes violation of a number of the disciplinary rules and ethical considerations of the Code of Professional Responsibility which governs lawyers' conduct. ACL has agreed to withdraw as counsel upon my disposition of the "second part" of Dow's motion.

This "other relief" sought are orders: (1) prohibiting ACL from disclosing confidences and secrets received from Dow and from turning over work product to substitute counsel; (2) compelling ACL to provide an accounting as to the disclosures already made and work product already turned over [1]; and (3) staying all proceedings pending disposition, including appeals, of this motion.[2] Because parts two and three of the other relief sought is summarily denied, the discrete issue presented is whether ACL may turn over work product prepared on behalf of plaintiffs to successor counsel. For the reasons set forth

---

1. In the course of its pleadings, ACL has already "accounted for" its disclosures and work product alrady turned over. In its brief in opposition, ACL states that it has no "evidence" obtained from Dow which could have been disclosed. Moreover, ACL's request for forthwith denial of Dow's motion so that substitute counsel may be quickly retained, and their July 24, 1986 pleading request for expedited hearing for the same reason suggests that no successor counsel has been chosen. No work product, therefore, has been turned over. This is a sufficient "accounting". Dow's motion with respect to an accounting, therefore is denied as moot.

2. Dow's motion to stay proceeding is denied. No arguments are made in support of this request and I imagine none that are persuasive.

below, I deny Dow's motion for orders prohibiting plaintiffs' counsel from turning over work product.

## FACTS

From at least July 7, 1979 through December 11, 1985, ACL was retained by Fireman's Fund Insurance Companies to defend Dow against five products liability suits.

*Harvey v. Dow*, 78 CV 2446, (Jefferson County District Court, filed December 13, 1978) involved DOWFAX 2–A1, an inert foaming agent added to urea formaldehyde insulation by manufacturers, distributors and/or installers. Dow paid $1,000 of a $50,000 settlement. *Gildow v. Dow*, 79 CV 0453, (Denver County District Court, filed January 19, 1979) was a case similar to *Harvey*, involving DOWFAX 2–A1 and multiple defendants. The case settled for $55,000, of which Dow paid $2,500. *Coale v. Dow*, 81 CV 3325, (Denver, fled April 14, 1981) concerned Dunsbar 44, a livestock insecticide which sterilized a prize bull. A verdict in excess of $1 million was entered against Dow. *Riggs v. Dow*, 82 CV 2817, (Jefferson, filed December, 1982), dealt with a truck driver's claim of harmful exposure to toxic Dow chemicals encountered while hauling loads for a third party. The case was dismissed shortly after the plaintiff's death for failure to substitute the estate as a party. These chemicals are distinct from those in Sarabond allegedly causing corrosion. *Ospino v. Dow*, 82 CV 2817 (Boulder County District Court, filed March 23, 1982) involved 8 defendants besides Dow and concerned Tyril, a type of plastic which allegedly emits toxic fumes upon being melted and molded. The case was ultimately settled, with Dow contributing $11,500. It is clear that none of these cases involved Sarabond.

## DISCUSSION

There are a small number of cases covering work product turnover with respect to an attorney *disqualified* for violating the duties of confidentiality and secrecy owed to a client. The propriety of turning over work product of an attorney withdrawing in the face of a claim that he is violating a former client's trust, however, appears to be an issue of first impression. The situations are analagous nonetheless; in both cases the key inquiry is whether allowing work product to pass to successor counsel would permit a party to obtain an advantage over his adversary because of the confidences and secrets its attorney had garnered through past representation of that adverse party.

A commentator has noted that "if disqualification alone eliminates the evils which necessitated it, then denial of the work product request can have no further benefits." Note, *The Availability of the Work Product of a Disqualified Attorney: What Standard?*, 127 U.Pa.L.Rev. 1607, 1619 (1979). Whether disqualification, or in this case withdrawal, eliminates the harm which led to withdrawal should be determined on a case by case basis. Moreover, the propriety of work product turnover should be considered apart from the underlying determination of whether withdrawal or disqualification is called for. In *First Wisconsin Mortg. Trust v. First Wisconsin Corp.*, 584 F.2d 201, 208 (7th Cir. 1978), the Fifth Circuit Court of Appeals declared:

> In our opinion ... automatic or per se equation of denial of work product to the disqualification of representation is not good law and the application of such a rule without more requires reversal ... We see no reason for an irrebutable presumption merely from dual representation in the conflict context to the effect that whenever cause for disqualification exists, any lawyer work thereafter is lost work irrespective of its nature or any other pertinent factors.

Where disqualification or withdrawal arises under circumstances where specific injury to the disqualifying party has not been shown, such withdrawal or disqualification "is primarily justified as a vindication of the integrity of the bar". *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3rd Cir.1978). In such

cases, denying turnover of work product would not serve the purpose of withdrawal and would have a severly harmful effect upon broader interests of justice and society. *See, Wisconsin,* 584 F.2d at 208.

To this end, a well conceived analytical framework has been formulated.[3] *,See, Work Product,* 127 U.Pa.L.Rev. 1607, 1611. Adapting this paradigm to the present circumstances, I will balance the harm allowing work product to be passed on imposes on Dow against the harm unavailability of work product will cause plaintiffs.

In determining what harm allowing work product turnover presents to Dow, I consider the relevance of the presumed confidences or secrets to the present litigation and the presence of those secrets in the work product. *See, Id.,* at 1624–25. Dow has failed to persuade me that the secrets and confidences allegedly known to ACL are at all relevant to the instant suit.

The previous cases did not concern Sarabond. They involved other Dow products. Dow contends that *any* products liability case is substantially related to the present case, so that any confidences and secrets gained in the past representation are necessarily relevant to the instant suit. Generally, Dow asserts that ACL learned about Dow's strategies, tactics, practices and philosophies regarding settlement, litigation, contribution and punitive damages in products liability suits. ACL also had general access to Dow's confidential files, but Dow fails to particularize any secrets gained or their relevance to the instant suit. More specifically, Dow asserts that in *Coale* ACL and Dow discussed whether Dow's manufacture, marketing and sale of Dursban 44 could expose Dow to liability. Dow also specifically alleges that in *Ospino* ALC witnessed the operation of a Dow injection molding machine at one of Dow's facilities

accessible only to Dow personnel and others with security approval. In the course of *Ospino* ACL and Dow also discussed prior claims and testing regarding the toxic chemicals at issue.

The relevance of the general and specific knowledge to the instant case is tenuous at best. The specific allegations are completely unrelated and only a wild imagination could see this information harming Dow in the present case. As to ACL's knowledge of Dow's approach to defending itself against a products liability suit, these secrets and confidences are of such a general, vague nature that they are of little benefit to plaintiff or detriment to Dow.

Knowledge of how Dow settles, litigates, seeks contribution, and defends is not particularly amenable to articulation. This knowledge only manifests itself in the attorney's visceral sensations. Any prejudice to Dow this knowledge creates is intangible. No "hard" secret or confidence can be known to ACL or used by plaintiffs.

In this light, there is little possibility that the specific or general knowledge can be manifested in any work product. This is not a case where specific knowledge of a parties' inner workings can be exploited in motion practice or at trial. The secrets and confidences here are, at best, only useful to plaintiff in settlement negotiation. Since the ACL has agreed to withdraw, the threat that the general confidences and secrets will be thusly used has been eliminated.

In sum, the possible harm to Dow which permitting ACL's work product to be turned over would create is small indeed. In comparison to the harm disallowing work product turnover would work upon plaintiff, possible harm to Dow is insignificant.

---

**3.** *Work Product,* 127 U.Pa.L.Rev. 1607, 161 advances the following test:

> [T]he court should authorize the turnover of work product unless the disqualification is grounded on the possibility that the disqualified attorney would use confidences and secrets to the detriment of the disqualifying party.

When the disqualification is based on that possibility, the court should employ a balancing approach: Only if the possibility that confidences or secrets will be used against the disqualifying party outweighs the deleterious effect of unavailability on the abandoned client should the court deny the work product request.

In *Wisconsin,* the Fifth Circuit cogently noted the harm which befalls a party whose attorney is disqualified and where work product is not allowed to pass to substitute counsel. I quote at length from that opinion:

> It would destroy the work done by disqualified counsel, irrespective of any fault on the part of the party for whom the work was done;
>
> It would do this regardless of whether the work destroyed involved the use of any confidential information obtained from the complaining party;
>
> .    .    .    .    .
>
> It would do a major injustice to the clients of disqualified counsel, causing them to pay a second time for the same work;
>
> It would encourage the public in its dissatisfaction with the expense and delay involved in the administration of the judicial system;
>
> It would provide no benefit to the complaining party other than the satisfaction of imposing an unnecessary financial burden on its opponent;
>
> It would in no way discipline disqualified counsel whose actions have been the cause of a disqualification order.

*Id.,* 584 F.2d at 208–09.

The Tenth Circuit is sensitive to the plight of a party whose attorney is disqualified, (or, presumably, withdrawn), due to potential use of a prior client's confidences and secrets. In *EEOC v. Orson H. Gygi Co., Inc.,* 749 F.2d 620, 622 (1984), the Court of Appeals upheld the trial court's having permitted work product turnover:

> Undoubtedly, the disqualification order works a hardship on Gygi, but the district court has lessened the hardship by allowing Mr. Barker to provide Gygi's substitute counsel with all work product relevant to Gygi's defense. In this way, the court has fulfilled the requirements of the Code of Professional Responsibility with only a minimal burden on Gygi.

On balance, though there is an outside possibility that Dow's confidences and secrets have been incorporated into ACL's work product and will be used against Dow, the potential harm denying work product to be passed on is much greater. The vindication of the bar's integrity and elimination of the threat of Dow's secrets and confidences being abused is accomplished by withdrawal. Disallowing work product from being turned over to substitute counsel is neither necessary nor prudent.

Accordingly, it is hereby ordered that ACL

1) is immediately withdrawn as counsel for plaintiffs; and

2) may turn over all work product to substitute counsel.