**QUARK, INC., Plaintiff,**

v.

**POWER UP SOFTWARE CORPORATION, et al., Defendants.**

**Civ. A. No. 92–B–701.**

United States District Court, D. Colorado.

Dec. 4, 1992.

Kurt S. Lewis, Kurt S. Lewis, P.C., Denver, CO, Robert E. Purcell, Law Offices of Robert E. Purcell, Englewood, CO, for Quark, Inc.

Scott S. Havlick, James E. Hartley, Holland & Hart, Denver, CO, for Power Up Software Corp.

ORDER

BABCOCK, District Judge.

Defendants move for the admission *pro hac vice* of Andrew P. Bridges (Bridges) of the law firm Wilson, Sonsini, Goodrich & Rosati (Wilson, Sonsini). Plaintiff objects, contending that the entire Wilson, Sonsini

---

firm must be disqualified under ethics rules governing client confidences and conflict of interest. The issue is adequately briefed and oral argument will not materially aid its resolution. The parties have also submitted extensive affidavits concerning the factual matters raised by this motion. Because a member of the Wilson, Sonsini firm represented plaintiff in substantially related prior litigation, disqualification is appropriate and the motion for admission *pro hac vice* is denied.

Plaintiff manufactures and sells desktop publishing software known as QuarkXPress. Defendants manufacture and sell desktop publishing software known as Express Publisher. Plaintiff contends that defendants' use of the word "Express" infringes its trademark and trade dress.

In another pending action, plaintiff was sued by Zeus, Inc., which alleges that plaintiff infringed its copyrights and misappropriated its trade secrets with the QuarkXPress software. In connection with that lawsuit, plaintiff retained the California law firm of Flehr, Hohbach, Test, Albritton & Herbert (Flehr, Hohbach). One of the partners in that firm, Stephen C. Durant (Durant), was extensively involved with the Zeus litigation although he was not attorney of record. Durant met with plaintiff's president, vice-president, and general counsel during which they had extensive discussions relating to general litigation strategy, and the background, history, development, technical aspects, and marketing of QuarkXPress. Plaintiff also provided Durant with confidential business information concerning the organization, structure, and operations of Quark, including intellectual property protection. Between November, 1991 and February, 1992, the Flehr, Hohbach firm performed approximately 215 hours of legal work for plaintiff and Durant personally performed 79.85 hours of that time.

In March, 1992, Durant joined the Wilson, Sonsini firm as a partner. Plaintiff filed this action on April 14, 1992, and the next day raised the question with Bridges of the conflict of interest created by Durant's move. On July 31, 1992, defendants moved for Bridges' admission *pro hac vice* and on August 24, 1992 plaintiff objected to that motion. The only motion technically before me is defendants' motion for admission *pro hac vice*. Because it would be futile to admit out-of-state counsel only to have that counsel disqualified for a conflict of interest, plaintiff's objection, in effect, converts the motion to one for disqualification.

■ A motion to disqualify rests with the sound discretion of the trial court. *FDIC v. Sierra Resources, Inc.,* 682 F.Supp. 1167, 1170 (D.Colo.1987). The moving party has the burden of showing sufficient grounds for disqualification. *Id.* Specific facts must be alleged and "counsel cannot be disqualified on the basis of speculation or conjecture...." *Id.* The District of Colorado has adopted the Colorado Code of Professional Responsibility as its standard of ethical conduct. Local Rule 306.

■ Canon 4 and DR 4–101 prohibit the disclosure of a client's confidences learned during a former representation. Disqualification under this rule turns on whether "a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client." *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985). "Substantiality is present if the factual contexts of the two representations are similar or related." *Id.* Once the court finds a substantial relationship, an irrebuttable presumption arises that the client has revealed information to the attorney that requires his disqualification. *Id.*

■ Defendants argue that this action and the Zeus litigation are not substantially related. The Zeus action involved copyright infringement while this action involves trademark infringement. Defendants contend that the copyright action focused on the "internal" workings of the QuarkXPress software while this trademark action focuses on the "external" dress and marketing of QuarkXPress. However, defendants define the inquiry too narrowly. Under *Smith,* a prior suit need not be identical or even similar to a pending

suit. The two actions merely need a related factual *context*. Here, the contexts of the two actions are clearly related. Both this action and the Zeus action involve the same software, QuarkXPress. Both actions involve questions of intellectual property. Therefore, I find that this action is substantially related to the Zeus action.

Furthermore, the irrebuttable presumption that Durant was privy to confidential information relevant to this case is bolstered by the uncontested affidavits of plaintiff's officers. These affidavits show that plaintiff revealed information to Durant relating to QuarkXPress marketing, development, and planning, and Quark's general procedures for intellectual property protection. Clearly, such information is relevant to this action and could be used by Durant's partners against plaintiff.

These findings trigger a rebuttable presumption that Durant shared the confidential information with other members of the Wilson, Sonsini firm, thus disqualifying the entire firm. *Smith*, 757 F.2d at 1100. The *Smith* court recognized a limited exception to this firmwide disqualification where the firm can prove that the "infected" attorney has been effectively screened from financial interest and participation in the pending action. *Id.* at 1101.

> Factors to be considered include but are not limited to, the size and structural divisions of the law firm involved, the likelihood of contact between the infected attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the infected attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation. The firm must have in place *specific institutional mechanisms* to block the flow of confidential information.

*Id.*, (emphasis added; citations omitted).

Here, defendants present only the affidavit of Bridges, who stated that he has not shared confidential information with any attorney or employee of Wilson, Sonsini. Defendants have not shown whether Durant will share in the fees derived from this action. Further, defendants have not shown whether Wilson, Sonsini has in place specific institutional mechanisms to block the flow of confidential information. Finally, the apparent lack of structural divisions in the Wilson, Sonsini firm makes contact likely between Durant and the specific attorneys responsible for this litigation. Therefore, I conclude that defendants have not rebutted the presumption of firmwide disqualification.

This conclusion raises the question of remedies. Aside from denying the motion for admission *pro hac vice*, plaintiff seeks to prevent Wilson, Sonsini from turning over any of its work-product to successor counsel and from working "behind the scenes" on this litigation. In *Behunin v. Dow Chemical Co.*, 642 F.Supp. 870, 872–73 (D.Colo.1986), the court focused on whether denying turn-over of work product would serve the purpose necessitating disqualification in the first instance. Here, disqualification of the Wilson, Sonsini firm alone does not eliminate the harm to plaintiff that led to disqualification—the protection of client confidences. Under *Smith*, I must presume that Durant's prior relationship with plaintiff infects his entire firm. This infection is not limited to persons but necessarily seeps into the work-product produced by those persons. Merely disqualifying the individual Wilson, Sonsini attorneys would not prevent any confidential information that found its way into their work-product from being used against plaintiff by successor counsel.

Although I recognize that this ruling will work a financial hardship on defendants and deprive them of their longstanding counsel, there is no other way to ensure that information revealed to Durant in the Zeus litigation will not be used against plaintiff here. Therefore, I hold that no member of the Wilson, Sonsini may work on this litigation "behind the scenes" and that no work-product may be turned over to successor counsel.

Accordingly, IT IS ORDERED THAT:

(1) Defendants' motion for the admission of Andrew Bridges *pro hac vice* is DENIED; and,

(2) Wilson, Sonsini, Goodrich & Rosati shall not represent defendants in this action and shall not turn over any of its work-product to successor counsel.