**RELIGIOUS TECHNOLOGY CENTER, a California non-profit corporation, and Bridge Publications, Inc., a California non-profit corporation, Plaintiffs,**

v.

**F.A.C.T.Net, INC., a Colorado corporation; Lawrence Wollersheim, an individual; and Robert Penny, an individual, Defendants.**

Civil Action No. 95–K–2143.

United States District Court, D. Colorado.

Nov. 21, 1996.

Todd P. Blakely, John R. Posthumus, Robert R. Brunelli, Sheridan Ross & McIntosh, P.C., Denver, CO, Earle C. Cooley, Cooley Manion Moore & Jones P.C., Boston, MA, Helen K. Kobrin, North Hollywood, CA, Jeffrey A. Chase, Ann B. Price, Jacobs Chase

**1472**

Frick, Kleinkopf & Kelley L.L.C., Denver, CO, Elliot J. Abelson, Los Angeles, CA, for Plaintiffs.

Clifford L. Beem, Stuart D. Mann, Beem & Mann, P.C., Denver, CO, Bob Penny, Longmont, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

Religious Technology Center ("RTC") and Bridge Publications, Inc. sue Lawrence Wollersheim, Robert Penny and F.A.C.T.Net, Inc. for injunctive relief and damages for copyright infringement (17 U.S.C. § 501) and trade secrets misappropriation (Colo.Rev. Stat. § 7–74–102 (1986)).

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a) and (b) over the copyright infringement claim and supplemental jurisdiction under 28 U.S.C. § 1367 over the trade secrets misappropriation claim, which Plaintiffs allege arises out of the same transaction and occurrences.

Pending are Defendants' Motion to Admit Graham E. Berry to Practice *Pro Hac Vice,* Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry Esq. and Motion to Admit Daniel A. Leipold to Practice *Pro Hac Vice.* I grant all three motions.

### I. *Procedural Status.*

On August 22, 1996, I granted the motions for leave to withdraw as counsel of record filed by Defendants' then counsel in this case, Faegre & Benson and Reiman & Associates, P.C. I ordered that F.A.C.T.Net must have new counsel enter an appearance by September 23, 1996, or be subject to being held in default and having a default judgment enter. I gave all three Defendants until January 6, 1997 to respond to the pending summary judgment motion filed by Plaintiffs.

On September 23, 1996, Clifford L. Beem, of the law firm of Beem & Mann, P.C. in Denver, Colorado, entered his appearance as co-counsel for the Defendants, F.A.C.T.Net, Inc. and Lawrence Wollersheim in this matter.[1]

On September 27, 1996, Beem filed a Motion to Admit Graham E. Berry to Practice *Pro Hac Vice* for the purposes of representing the corporate Defendant F.A.C.T.Net, Inc. in this case.

On September 27, 1996, Plaintiffs' Opposition to *Pro Hac Vice* Application of Graham Berry and Musick, Peeler, & Garrett was filed. Defendants Wollersheim and F.A.C.T.Net filed a response to the opposition. Thereafter, I permitted both sides to file various supplemental documents relating to the issues of Berry's admission *pro hac vice.*

On October 9, 1996, F.A.C.T.Net filed a Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry, Esq. On October 11, 1996, I granted this motion *pro tempore* until Berry's request to practice *pro hac vice* is granted or denied. On October 18, 1996, Plaintiffs filed an opposition to the motion for a protective order.

On October 10, 1996, Defendants F.A.C.T.Net and Wollersheim filed a Motion to Admit Daniel A. Leipold to Practice *Pro Hac Vice* for the purposes of representing Wollersheim in this case. On October 18, 1996, Plaintiffs' Objections to Motion of Daniel A. Leipold to Appear *Pro Hac Vice* was filed. F.A.C.T.Net and Wollersheim responded to the objections on November 8, 1996. On November 18, 1996, Plaintiffs filed a reply.

### II. *Analysis of Pending Motions.*

#### A. *Motion to Admit Graham E. Berry to Practice Pro Hac Vice.*

Plaintiffs, in their Opposition to *Pro Hac Vice* Application of Graham Berry and Musick, Peeler, & Garrett, argue the Musick, Peeler firm and Berry should be disqualified because (1) Berry was a central figure in the events that lead to this suit, and is therefore

---

1. No appearance has been entered on behalf of Defendant Robert Penny. I suggested in court on August 22, 1996 that because of Penny's serious illness, multiple sclerosis, the parties should attempt to extricate him from this suit and the related suit of *F.A.C.T.Net, Inc. et al. v. Coregis Insurance Co.,* 926 F.Supp. 1426 (D.Colo.1996).

a material witness as to contested issues where his credibility will be a significant factor; (2) Berry and the Musick, Peeler firm both previously represented a former counsel of RTC in actions against RTC, during the course of which representation both Berry and the Musick, Peeler firm necessarily were exposed to confidences RTC exposed to its former counsel on matters substantially related to the instant lawsuit; and (3) there is a conflict of interest created by the fact that another Musick, Peeler partner was a member of a law firm where dozens of attorneys and paralegals represented plaintiffs and other Church of Scientology entities in a wide variety of matters, and participated in briefings on Plaintiffs' legal affairs, including intellectual property matters.

Plaintiffs assert each of these grounds requires disqualification under the Colorado Rules of Professional Conduct, which set the standard for attorneys practicing before this court. *See* D.C.Colo.LR 83.6. Rule 3.7 of the Colorado Rules of Professional Conduct provides:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Colo.R.Prof.Conduct 3.7(a). Plaintiffs argue none of the exceptions applies here.

In response, Defendants deny that Berry is a "necessary witness," asserting any information he may have is privileged, irrelevant or obtainable elsewhere. They maintain disqualification of Berry would cause F.A.C.T.Net substantial hardship and that

F.A.C.T.Net has waived any conflict of interest that may arise from testimony by Berry. Defendants argue Berry's representation of Plaintiffs' former counsel does not disqualify him from again opposing Plaintiffs here. Finally, with regard to the Musick, Peeler partner, Willie Barnes, Defendants state there is no substantial relationship between the present matter and the work done by Barnes at his previous firm. They further contend Barnes received no actual material confidential information and Musick, Peeler has in place specific institutional measures to screen him from the present litigation.

### 1. *Berry as a Material Witness.*

■ Plaintiffs' opposition to the motion to admit Berry to practice *pro hac vice* amounts to a motion to disqualify Berry and the Musick, Peeler firm from representing Plaintiff F.A.C.T.Net in this lawsuit. *See Quark, Inc. v. Power Up Software Corp.,* 812 F.Supp. 178, 179 (D.Colo.1992). "A motion to disqualify rests within the sound discretion of the trial court." *Id.*

Plaintiffs first seek to disqualify Berry and his new firm on the basis that Berry is a "necessary witness" under Rule 3.7 of the Colorado Rules of Professional Conduct and therefore should not act as an advocate for Defendants at trial.

■ Plaintiffs have the burden to establish the grounds for disqualification. *See World Youth Day, Inc. v. Famous Artists Merchandising Exchange,* 866 F.Supp. 1297, 1299 (D.Colo.1994). When ruling on a motion for disqualification of counsel, one must make specific findings and conclusions. *Id.* However, the use of these factual findings is restricted to the decision on this motion and the parties are not bound by the factual findings for any other purpose in the course of this litigation. *Id.*[2]

2. Neither party has requested an evidentiary hearing concerning the motion for admission *pro hac vice.* In *Fullmer v. Harper,* the Tenth Circuit held where a

verified motion to disqualify raises ethical questions that are conceivably of a serious nature.... the trial court should ... hold a full evidentiary hearing on the issues posed by the motion to disqualify and the response thereto, which hearing should include the taking of

testimony. A motion of this type should not be resolved on the basis of mere colloquy between court and counsel. At the conclusion of such hearing the trial court should then make specific findings and conclusions....

517 F.2d 20, 21 (10th Cir.1975).

Some district courts have followed this ruling as mandating an evidentiary hearing. *See, e.g., Geralnes B.V. v. City of Greenwood Village,* 609 F.Supp. 191, 192 (D.Colo.1985) (Kane J.); *Green-*

"The rules of professional conduct, as adopted by the Colorado Supreme Court, are adopted as the standards of professional responsibility applicable in this court." D.C.Colo.L.R. 83.6. Effective January 1, 1993, the Colorado Supreme Court has adopted the Colorado Rules of Professional Conduct.

Plaintiffs' opposition to the motion to admit Berry *pro hac vice* rests upon Colorado Rule of Professional Conduct 3.7 which reads pertinently: "A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness...." [3]

A party seeking disqualification of an attorney as "likely to be a necessary witness," must show that "the advocate's testimony [is] necessary, and not merely cumulative ..." Colorado Bar Association Ethics Committee Opinion, *Formal Opinion No. 78: Disqualification of the Advocate/Witness*, 23 Colorado Lawyer 2087, 2088–89 (Sept.1994). "The court may delay ruling on a motion to disqualify until it can determine whether another witness can testify." *Id.* "A lawyer is a 'necessary' witness if his or her testimony is relevant, material and unobtainable elsewhere." *World Youth Day, Inc.*, 866 F.Supp. at 1302.

In considering a motion for disqualification of counsel,

a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is a risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Colo.R.Prof.Conduct 3.7, Comment [4].

"The financial burden on the client of replacing the attorney, if combined with other circumstances, may be sufficient to create an exception [to disqualification.]" CBA Ethics Committee Opinion No. 78 at 2089–90.

---

*ebaum–Mountain Mortgage Co. v. Pioneer Nat. Title Ins. Co.*, 421 F.Supp. 1348, 1349 (D.Colo. 1976). Others have not. *See, e.g., Beck v. Board of the Regents of Kansas*, 568 F.Supp. 1107, 1113 (D.Kan.1983) (noting that *Harper* mandated the district courts to make findings of fact and conclusion of law in ruling on motions to disqualify opposing counsel, but declining to hear oral argument and making no mention of the evidentiary hearing requirement). Notably in the recent case of *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.*, 866 F.Supp. 1297 (D.Colo.1994), extensively cited by both sides, the court heard oral argument on the motion to disqualify, but made no mention of an evidentiary hearing.

I find no authority mandating an evidentiary hearing concerning an opposed motion for admission *pro hac vice*. Neither party has requested an evidentiary hearing nor oral argument. Plaintiffs do not frame their opposition as a "motion to disqualify," although their arguments amount to such. Even if granting of the *pro hac vice* motion effectively amounts to the denial of a motion to disqualify, such denial is not appealable as a final order under 28 U.S.C. § 1291. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).

In *Taylor v. Grogan*, 900 P.2d 60, 64 (Colo. 1995) (en banc), *cert. denied*, — U.S. —, 116 S.Ct. 816, 133 L.Ed.2d 761 (1996), the court found neither Rule 3.7 nor the accompanying committee comment mandate a hearing where there is a possibility of conflict of interest on the part of an attorney called as a witness.

In the circumstances, I find an evidentiary hearing is not required.

3. The Comment to Rule 3.7 states its rationale:

Combining the roles of advocate and witness can involve a conflict of interest between the lawyer and client and can prejudice the opposing party. If a lawyer is both counsel and witness, the lawyer becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility.

The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof. Colo.R.Prof. Conduct 3.7, Comment [1], [2].

For the reasons stated below, I find Plaintiffs have not met their burden of proof to establish Berry is a "necessary witness." I also find disqualification of Berry would work substantial hardship on F.A.C.T.Net.

Plaintiffs contend Berry was a central figure in the events that lead to this suit, and is therefore a material witness as to contested issues where his credibility will be a significant factor. They assert the posting to the Internet of RTC's Advanced Technology materials which triggered this lawsuit was made by F.A.C.T.Net director Arnaldo Lerma who was separately sued by RTC in the Eastern District of Virginia. The posting was of certain "OT II" and "OT III" works which were attached to a document referred to as the "Fishman Declaration."

Plaintiffs assert Berry is inextricably linked with the events surrounding the Fishman declaration which appeared as a filing in the lawsuit entitled *Church of Scientology International v. Fishman and Geertz* in the Central District of California. Geertz was represented by the law firm of Lewis, D'Amato, Bribois & Bisgaard ("Lewis, D'Amato") and Berry was the partner in the firm who handled the case. According to Plaintiffs, the Fishman Declaration, including the OT II and OT III exhibits, was filed by Berry in support of a motion for reconsideration of an order changing venue.

In this case, Plaintiffs assert, Defendants have argued Berry's placement of the Fishman Declaration and attachments in the court file has justified their posting of RTC's copyrighted and trade secret materials. Lerma testified he obtained a copy of the documents from Wollersheim who has testified that he received his copy from Berry's former law firm Lewis, D'Amato, while serving as an expert witness for Berry. Plaintiffs state Wollersheim argues the passage of the documents from Berry to him legitimizes Defendants' possession of them although RTC claims the documents were stolen and misappropriated.

It is Plaintiffs' position that the Colorado Uniform Trade Secrets Act places in issue the circumstances under which a defendant acquired the trade secret materials and the knowledge of the person furnishing them.

*See* Colo.Rev.Stat. § 7–74–102 (1986). Plaintiffs state Berry is a material witness regarding the chain of custody of the documents at issue. They state he was identified as a material witness in this case in December 1995 in their initial disclosures as someone "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings."

According to Plaintiffs, Berry's anticipated testimony relates to his personal knowledge regarding the OT II and OT III materials, his filing of the Fishman Declaration and attachments in the *Fishman* court file, his passage of the declaration to Wollersheim, Wollersheim's participation with him in the *Fishman* case, and any participation by Berry or Wollersheim in the execution of the release.

Plaintiffs maintain because they are raising disqualification within hours of the notice of *pro hac vice* application, when Berry and Musick, Peeler are coming in as new counsel, there is no hardship on Defendants who have already engaged other counsel to represent them and will not be left unrepresented.

In response, Defendants state Berry is not a "necessary witness" under Rule 3.7(a) because his expected trial testimony is not "relevant, material and unobtainable elsewhere." *World Youth Day, Inc.,* 866 F.Supp. at 1302. They address the areas in which Plaintiffs assert Berry will be a necessary witness.

Defendants' position is Berry's personal knowledge of the OT II and OT III works is irrelevant and immaterial to the present matter and Plaintiffs' desire for information in this subject area falls short of making Berry a necessary witness. They assert Berry is not on trial and has been specifically released from all possible liability relating to the *Fishman* case by Paragraph 6 of the "Agreement and Mutual General Release" entered into between the Church of Scientology and Berry's former law firm, Lewis, D'Amato.

Defendants further respond Berry's knowledge of the filing of the Fishman Declaration in the *Fishman* court file is also irrelevant. They state the parties agree Defendants in the instant case received official court-stamped copies of the declaration and attach-

ments. Berry denies that he personally filed the documents and thus, even if relevant, Berry's actual knowledge of the filing is cumulative and hearsay. Any other information Berry may have relating to the *Fishman* declaration, Defendants argue, is privileged pursuant to the attorney client privilege, the attorney work-product doctrine and/or the joint defense privilege.

Likewise, Defendants argue, any receipt by Berry of the OT II and OT III works is irrelevant and immaterial to the present proceedings; any information regarding the Lewis, D'Amato firm's receipt of such documents is similarly privileged; and the information at issue is obtainable from other sources including the Lewis, D'Amato's clerical staff and other attorneys who worked more closely with the documents than did Berry.

Defendants make similar arguments of privilege, and additionally, the expert consultant privilege contained in Federal Rule of Civil Procedure 26(b)(4)(B), concerning any knowledge Berry might have of the passage of the Fishman Declaration to Wollersheim as a non-testifying expert consultant for Lewis, D'Amato in the *Fishman* matter.[4] They maintain, since Wollersheim has admitted he received the Fishman Declaration and attachments from Lewis, D'Amato while serving as an expert consultant, a restatement of this information by Berry would be merely cumulative.

The same arguments are made concerning Wollersheim's participation with Berry in the *Fishman* case. According to Defendants, the only relevant information from Wollersheim's participation is that F.A.C.T.Net and Wollersheim received a copy of the Fishman Declaration from Lewis D'Amato in connection with Wollersheim's services as an expert consultant. As the parties agree Wollersheim has already testified to that, Defendants maintain it is not contested and Berry's knowledge of the subject is irrelevant.

With reference to Berry's being a material witness regarding "any participation by Berry or Wollersheim in the execution of the [Lewis, D'Amato/Church of Scientology,]" release, Defendants state Plaintiffs are aware Berry was out of the country during the creation of the settlement agreement and had no first hand knowledge of its negotiation or execution. Therefore, they argue, the parties who were involved in creating this agreement could testify on the subject with far more knowledge than Berry. Similarly, as regards the funding and set-up of F.A.C.T.Net, Berry states he was not involved and thus has no percipient knowledge.

In his second declaration attached to Defendants' response, Berry states it is too early in this litigation to determine whether he could be a material witness and, in the unlikely event that he were, he would step aside as trial counsel, if indeed he acts as F.A.C.T.Net trial counsel, a matter not settled at this time.

In addition Defendants argue disqualification of Berry would work substantial hardship on F.A.C.T.Net as contemplated in the Colorado Rule 3.7(a)(3). They assert Plaintiffs have a reputation for engaging in extreme litigation and extra-litigation tactics which has resulted in less than a handful of attorneys in the nation being willing to litigate against the Church of Scientology organization, of whom Berry is one of the two most experienced and successful.[5] The other

---

4. A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain other facts or opinions on the same subject by other means. Fed.R.Civ.P. 26(b)(4)(B).

It is Defendants' position that the Church of Scientology did not depose Wollersheim in connection with his expert declaration in the *Fishman/Geertz* case as envisaged by the rule and thus, the communications, documents and information that passed between Berry and Wollersheim remain privileged under the rule, as well as under the attorney-client privilege and Berry's attorney work-product privilege.

5. Defendants assert the Church of Scientology and its related entities utilize their own language, dictionary, scriptures and policy statements which take years of adversarial litigation to discover, interpret and apply. With reference to Plaintiffs' litigation tactics, Defendants cite a re-

attorney declines to be involved in the case unless Berry is also counsel of record. According to Wollersheim's declaration, no other qualified law firm has been willing to undertake to litigate against Plaintiffs.

Further, Wollersheim states F.A.C.T.Net has already spent a large amount of money and a large portion of its remaining time bringing the Musick, Peeler firm up to speed on the case for the January 6, 1997 court deadline for summary judgment opposition, has shipped almost two hundred banker boxes of records to the firm and has already spent approximately $1.4 million attempting to litigate against Plaintiffs with a law firm which had not previously litigated against them.

Defendants consider Berry to be the most willing and qualified attorney to represent F.A.C.T.Net in this case and assert his loss would "work substantial hardship" on F.A.C.T.Net under Rule 3.7 which was intended to be "less prone to exploitation by opposing parties and more compatible with each party's interest in retaining its counsel of choice." CBA Ethics Committee Opinion No. 78 at 2089 (citing *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F.Supp. 96, 100 (D.Del.1987)).

Finally, Defendants assert F.A.C.T.Net has consented to representation by Berry, an attorney who may be called as a witness and that in these circumstances, waiver precludes disqualification as long as a "disinterested lawyer" would conclude that the client should agree to the representation under the circumstances. *Id* at 2088. Because, they argue, few attorneys would be willing and able to stand up to the Church of Scientology's litigation tactics, a "disinterested lawyer" would clearly have selected Berry as well.

In assessing whether Berry is a necessary witness, I consider the two claims of Plaintiffs in this action, one for copyright infringement and the other for misappropriation of trade secrets under Colorado Revised Statute § 7–74–102 (1986).

To prevail in a copyright infringement action, a plaintiff must prove (1) ownership of a valid copyright and (2) defendant copied "protected components of the copyrighted material." *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir.1993). Plaintiffs have not established the relevance of Berry's testimony to this claim, nor to the issue of Defendants' "fair use" defense.

With regard to the trade secrets claim, the issue is whether Defendants misappropriated Plaintiffs' alleged trade secrets by using portions of the OT II and OT III works without authorization. In ruling on Plaintiffs' motion for a preliminary injunction, I found the evidence showed the works to be widely known outside the Church of Scientology through multiple sources. *See Religious Technology v. F.A.C.T.Net, Inc.*, 901 F.Supp. 1519, 1527 (D.Colo.1995). The court in *Religious Technology Center v. Lerma*, E.D.Va. 95–1107–A dismissed the trade secret count as to all defendants in that case in which Lerma was sued arising out of the same posting to the Internet of the Works which triggered this lawsuit. This diminishes the likelihood that any testimony about the source of the Fishman Declaration is relevant and material.

Wollersheim has already testified he received a copy of the Fishman Declaration from Lewis, D'Amato in his capacity as non-testifying consultant in the *Fishman* case. Berry's testimony in this regard would be duplicative. The issues raised by the trade secrets claim concern whether Defendants, rather than Berry, misappropriated the al-

---

cent Ninth Circuit Court of Appeals ruling that the Church of Scientology organization had been playing "fast and loose with the judicial system" and levied $2.9 million in sanctions against it for "destruction and concealment of documents, refusal to comply with many court orders, needless delay, and multiplication of the proceedings by [the Church of Scientology] and [its] filings of frivolous motions and of offensive and unreasonable motions." *Religious Technology Center v. Church of the New Civilization,* No. 94–55781,

slip op. at 13, 1996 WL 171443 (9th Cir. April 11, 1996). Specifically, with regard to the church's tactics against Defendant Wollersheim, the California Court of Appeal stated earlier this year: "When one party to a lawsuit continuously and unsuccessfully uses the litigation process to bludgeon the opponent into submission, those actions must be closely scrutinized for constitutional implications." *Church of Scientology of California v. Wollersheim,* 42 Cal.App. 4th 628, 649, 49 Cal.Rptr.2d 620 (Cal.App.1996).

leged trade secrets. Moreover, Berry has been released from all liability relating to the *Fishman* case by the "Agreement and Mutual Consent General Release" entered into between the Church of Scientology and Lewis, D'Amato.

Plaintiffs have not established that Berry is a necessary witness, as contemplated by Colorado Rule of Professional Conduct 3.7 with regard to either of Defendants' claims. Compelling Berry to testify with regard to the various topics on which Plaintiffs claim his testimony is necessary would also invoke issues of the attorney client privilege, attorney work-product doctrine, the joint defense privilege and the expert consultant privilege.

Moreover, in considering Plaintiffs' opposition to Berry's representation, I must guard against the possibility that Plaintiffs may seek to disqualify Berry in order to "secure a tactical advantage in the proceedings." *See Bartech Ind., Inc. v. Int'l Baking Co., Inc.,* 910 F.Supp. 388, 392 (E.D.Tenn.1996). The parties' litigation history and Berry's detailed declaration with regard to the animosity of the Church of Scientology organization toward him are germane in this regard.

I am also persuaded that in light of all the relevant circumstances, denying Berry's motion for admission *pro hac vice,* alternatively disqualifying him from acting as counsel for F.A.C.T.Net, would work substantial hardship on F.A.C.T.Net for the reasons Defendants have argued.

2. *Berry and the Musick, Peeler Firm's Previous Representation of a Former Counsel of RTC.*

■ Plaintiffs assert Berry and the Musick, Peeler firm both previously represented a former counsel of RTC in actions against RTC, during the course of which representation both Berry and the Musick, Peeler firm necessarily were exposed to confidences RTC shared with its former counsel on matters substantially related to the instant lawsuit.

Here, Plaintiffs refer to Berry and Musick, Peeler's representation of Joseph A. Yanny, a former attorney for RTC, in a suit in which RTC sued Yanny for numerous causes of action, including breach of fiduciary duty,

breach of contract, tortious breach of the covenant of good faith and fair dealing, constructive fraud, fraud, intentional interference with contract, civil conspiracy and conversion.

Plaintiffs rely on *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975). In *Hull,* the issue was "whether a law firm can take on, as a client, a lawyer for the opposing party in the very litigation against the opposing party." *Id.* at 569. The *Hull* court stated: "the novel factual situation here dictates a narrow reading of this opinion." *Id.* at 572. It distinguished its holding from the result reached in *Meyerhofer v. Empire Fire & Marine Insurance Co.,* 497 F.2d 1190 (2d Cir.), *cert. denied,* 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974), where the court held disqualification was unnecessary as the lawyer had acted properly in defending himself against an accusation of wrongful conduct.

The facts here are more analogous to those in *Meyerhofer.* There, an attorney, Goldberg, left his law firm after he had objected to its handling of a client's securities offering. Goldberg gave an affidavit to the Securities Exchange Commission and three months later, upon being informed that he was to be included as a defendant in an action against his former firm and client, gave a copy of the affidavit to plaintiffs' counsel, the Bernson firm, showing lack of complicity with the alleged wrongdoing. Upon plaintiffs' motion to the court, Goldberg was dropped as a defendant.

Defendants moved to disqualify the Bernson firm on the grounds that they had received confidential information from defendants' former lawyer. The appeals court held a "lawyer may reveal confidences or secrets necessary to defend himself against 'an accusation of wrongful conduct.'" *Id.* at 1194. It affirmed the district court's order prohibiting Goldberg from representing the interests of plaintiffs against his former client but found no basis to disqualify the Bernson firm from representing plaintiffs "in either this or similar actions." *Id.* at 1196.

Likewise here, Yanny would be prohibited from representing the interests of any party against his former client, the Church of Scientology organization. However, I see no

basis for precluding Berry or the Musick, Peeler firm from representing F.A.C.T.Net based on the fact that they formerly represented Yanny in defending him against charges made by the Church of Scientology.

Moreover, in suing Yanny as it did, Plaintiffs waived any privilege with respect to any information relevant to the issues raised by their claims and released Yanny from his obligation of secrecy with respect to that information. *See Carlson, Collins, Gordon & Bold v. Banducci*, 257 Cal.App.2d 212, 228, 64 Cal.Rptr. 915 (Cal.App.1967) (holding "an attorney is released from those obligations of secrecy which the law places upon him whenever the disclosure of a communication, otherwise privileged, becomes necessary to the protection of the attorney's own rights.") That principle of California professional responsibility law is also applicable here to Berry and Musick, Peeler's representation of Yanny.

The Tenth Circuit has set out requirements which a party seeking to disqualify opposing counsel on the ground of a former representation must establish:

(1) an actual attorney-client relationship existed between the moving party and the opposing counsel;

(2) the present litigation involves a matter that is "substantially related" to the subject of the movant's prior representation; and

(3) the interests of the opposing counsel's present client are materially adverse to the movant.

*Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1384 (10th Cir.1994). Here, there is no showing that the Plaintiffs were ever represented by Berry or Musick, Peeler, thus one does not reach the issue of whether the present litigation involves a matter "substantially related" to that in a prior lawsuit.

I therefore find no basis for denying Berry's motion for admission *pro hac vice* or disqualifying him or Musick, Peeler on the grounds of their former representation of Yanny.

### 3. *Musick, Peeler's Conflict of Interest*

■ Plaintiffs argue there is a conflict of interest created by the fact that another Musick, Peeler partner, Willie Barnes, was a member of a law firm, Wyman, Bautzer, Kuchel & Silbert which represented Church of Scientology entities in a wide variety of matters, including intellectual property matters.

"A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client...." Colo.R.Prof.Conduct 1.9(b). This paragraph "operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b)." Comment to Rule 1.9. "'Substantiality is present if the factual contexts of the two representations are similar or related.'" *Quark, Inc.*, 812 F.Supp. at 179 (quoting *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985)). In seeking to disqualify an attorney, "[s]pecific facts must be alleged and 'counsel cannot be disqualified on the basis of speculation or conjecture....'" *Id.* (quoting *FDIC v. Sierra Resources, Inc.*, 682 F.Supp. 1167, 1170 (D.Colo.1987)).

Plaintiffs do not allege nor establish that the factual context of any matter on which Barnes worked while at the Wyman firm was similar to that underlying the alleged copyright and trade secret violations at the heart of this case. Nor do they allege actual knowledge of Barnes of any confidential factual information of relevance to the subject case.

Barnes has stated the only connection he had with Plaintiffs was his involvement in "one minor consultation with another Wyman attorney that generally related to the franchise investment law of the State of California." (Resp. Pls.' Opp. *Pro Hac Vice* App., Barnes Decl. ¶ 4.) He denies receiving any knowledge of any confidential information that could be material to the present case. (*Id.* ¶¶ 4–7.)

Plaintiffs have failed to make the basic showing that Barnes was involved in matters substantially related to this suit while at the

Wyman firm. Therefore, the presumption does not arise that Barnes was privy to confidential information relevant to this case, nor that he shared such information with other members of Musick, Peeler, thus disqualifying the entire firm. *See Quark, Inc.,* 812 F.Supp. at 179–80.

Moreover, the Tenth Circuit, rather that adopt a *per se* rule of imputed knowledge that would require automatic disqualification of the firm, has recognized an exception for those firms which have adopted "pre-existing institutional mechanisms that effectively screened the attorney from the current case." *Hunter Douglas, Inc. v. Home Fashions, Inc.,* 811 F.Supp. 566, 570 (D.Colo.1992) (citing *Smith,* 757 F.2d at 1100); *see also Quark, Inc.,* 812 F.Supp. at 180.

I am satisfied that such measures were in place at Musick, Peeler before it accepted the present case and that the firm's "confidentiality wall" satisfies the factors for effectively screening Barnes from financial interest and participation in the instant case. *See Smith,* 757 F.2d at 1101; *Quark, Inc.,* 812 F.Supp. at 180.

For all the aforesaid reasons, I grant the motion to admit Berry to practice *pro hac vice.*

### B. *Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry Esq.*

■ On October 11, 1996, I granted F.A.C.T.Net's Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry, Esq. *pro tempore* until Berry's request to practice *pro hac vice* was granted or denied. On October 18, 1996, Plaintiffs filed an opposition to the motion for a protective order.

■■ I have granted Berry's request to practice *pro hac vice.* As counsel for Defendant F.A.C.T.Net, Berry's deposition should only be allowed if Plaintiffs have shown (1) no other means exist to obtain the information other than to depose him; (2) the information is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *See Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). For the reasons stated above in relation to the motion for admission of Berry *pro hac vice,* I find Plaintiffs have not made the necessary showing to allow the taking of Berry's deposition.

With regard to the document request, Plaintiffs request Berry to produce:

1. All documents which you gave to Lawrence Wollersheim, Robert Penny, Arnaldo Lerma, or F.A.C.T.Net, Inc. in connection with work performed for you in *Church of Scientology International v. Fishman,* Case No. 91–6426 HLH (Tx).

2. All documents concerning the Advanced Technology.

(Mot. Protective Order, Ex. B, Subpoena in Civil Case, Ex. A at 3.)

As noted in *Shelton:*

The work-product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions and legal theories.

. . . .

[W]here, as here, the deponent is opposing counsel and opposing counsel has engaged in a process of selecting and compiling documents in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product.

*Shelton,* 805 F.2d at 1328–29.

■ With regard to the first request for documents given by Berry to F.A.C.T.Net and its directors in connection with the expert consulting performed for him in the *Fishman* case, production of the documents would reveal more than their mere existence. They would be reflective of Berry's "mental selective process." *See id.* at 1329. As such, the documents are protected as work product.

■ Moreover, the information and documents F.A.C.T.Net and its directors received "in connection with work performed" in the *Fishman* matter are privileged pursuant to Rule 26(b)(4)(B) concerning disclosure by non-testifying expert consultants.

In addition, Berry's statement that these documents have not been returned to him by Defendants is uncontradicted. The documents are therefore obtainable by means other than subpoenaing Berry. Finally, Berry states he has no percipient knowledge of the actual delivery of the documents to Defendants and names several persons who would be more appropriate sources of information in this regard.

With regard to the second request for all documents concerning the "Advanced Technology," since the Church of Scientology produced these documents and has the original or copies, it is not essential to Plaintiffs case that Berry produce them.

Accordingly, I grant the Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry, Esq. F.A.C.T.Net requests me to sanction Plaintiffs and award Berry his expenses and fees incurred in the preparation of this motion for a protective order because the deposition subpoena was intended to harass him and is unduly burdensome. I deny this request.

### C. *Motion to Admit Daniel A. Leipold to Practice Pro Hac Vice.*

■■■ Plaintiffs object to the motion of Daniel Leipold to appear *pro hac vice* for the purpose of representing Defendant Lawrence Wollersheim. They contend he assumed custody of the litigation files from *Church of Scientology v. Fishman* containing the Fishman Declaration on July 11, 1996 and that twenty days later Lerma made his allegedly unlawful posting of the declaration and its attachments leading to this action. Plaintiffs contend Leipold like Berry is inextricably linked with the chain of custody of the subject documents leading to the copyright and trade secrets violations at issue.

It is Plaintiffs' position that Leipold is therefore a "necessary witness" whose testimony is "relevant, material and unobtainable elsewhere." *See World Youth Day, Inc.*, 866 F.Supp. at 1302. Accordingly, Plaintiffs maintain Leipold's disqualification should be granted and his *pro hac vice* application be denied under Colorado Rules of Professional Conduct, Rule 3.7 which prohibits an attorney from being an advocate for a trial in which he is likely to be a necessary witness.

Defendants respond that Plaintiffs' contention that Leipold cannot serve as counsel is meritless because Defendants in this action have testified that they possessed the relevant documents months before Leipold's brief possession of the documents.

Having reviewed the affidavits of Leipold and Wollersheim and the deposition of Lerma, I find no merit in Plaintiffs' contention that Leipold is linked with the chain of custody of the documents at issue which lead to the alleged copyright and trade secrets violations. Plaintiffs have not shown that Leipold is a necessary witness in this regard. Accordingly I grant the Motion to Admit Daniel A. Leipold to Practice *Pro Hac Vice.*

### III. *Conclusion.*

I grant the Motion to Admit Graham E. Berry to Practice *Pro Hac Vice,* Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry, Esq. and Motion to Admit Daniel A. Leipold to Practice *Pro Hac Vice.*

On August 22, 1996, I granted Defendants Wollersheim, F.A.C.T.Net and Penny until January 6, 1997 to respond to Plaintiffs' pending motion for summary judgment and set a hearing on the motion for February 7, 1997 at 8:00 a.m.

The opposition to the admission of Berry and Leipold as counsel for Defendants F.A.C.T.Net and Wollersheim has resulted in nearly a two month delay in Defendants' retention of their desired counsel. I allow Defendants until February 6, 1997 to respond to the summary judgment motion and continue the hearing on the motion to March 17, 1997 at 9:00 a.m. Accordingly,

IT IS ORDERED THAT the Motion to Admit Graham E. Berry to Practice *Pro Hac Vice* is GRANTED;

IT IS FURTHER ORDERED THAT the Motion for Protective Order Prohibiting Deposition and Document Discovery of Graham E. Berry, Esq. is GRANTED;

IT IS FURTHER ORDERED THAT the Motion to Admit Daniel A. Leipold to Practice *Pro Hac Vice* is GRANTED;

IT IS FURTHER ORDERED THAT Defendants have up to and including February 6, 1997 to respond to the pending summary judgment motion and the hearing on the motion is continued to March 17, 1997 at 9:00 a.m.